322 F.2d 650
 W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellant
v.
GRAHAM TRANSFFR AND STORAGE COMPANY and Malcolm E. Graham,
Sr., Appellees.
W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellant,
v.
Louis A. GUILLOT, d/b/a Jackson Dental Laboratory &
Supplies, Appellee.
W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellant,
v.
Lute S. ELLISON, L. L. Branscome and L. L. Branscome, Jr.,
Appellees.
W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Appellant,
v.
CLARK-BURT ROOFING COMPANY, William T. Clark and Douglas E.
Burt, Appellees.
 Nos. 20048-20051.
 United States Court of Appeals Fifth Circuit.
 Sept. 24, 1963.
 
 Bessie Margolin, Associate Sol. of Labor, Charles Donahue, Sol. of Labor, Jacob I. Karro, Caruthers G. Berger, Attys., Dept. of Labor, Washington, D.C., Beverley R. Worrell, Regional Atty., Dept. of Labor, for appellant.
 C. Arthur Sullivan, John C. Sullivan, Jackson, Miss., Sullivan, Sullivan & Keyes, Jackson, Miss., of counsel, for appellees.
 Before PHILLIPS,* WISDOM and GEWIN, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 The question for decision in each of these four appeals is whether a permanent injunction restraining the defendant from violating the Fair Labor Standards Act should be vacated. In each case the defendant has observed the law since the issuance of the injunction, but has not shown any special hardship or new or changed conditions not readily foreseeable at the time the decree was entered. We hold that when an injunction is issued under the Fair Labor Standards Act, 'nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions' is required in order to modify or vacate a permanent injunction. United States v. Swift & Co., 1932, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. The defendants-appellees made no such showing.
 
 
 2
 In all of these cases the district court entered injunctions by consent restraining the defendants from future violations of the Fair Labor Standards Act. 29 U.S.C.A. 201 et seq. In Guillot the court granted a permanent injunction February 28, 1947. Ten years later the court issued an amended injunction because of violations of the earlier order and new violations of minimum wage and child labor requirements. In Ellison the court enjoined the defendant five years before the motion to vacate was filed, in Graham three years before, and in Clark-Burt only one year before. The only evidence the defendants submitted consisted of a stipulation, admitted over the plaintiff's objection, that if the defendants were called as witnesses, each would testify that he was then in compliance with the Act, that he intended to remain in compliance as long as the business in which he was engaged came under its coverage, and that he had been in compliance since the issuance of the injunction. On the strength of the stipulation the district court vacated the permanent injunctions.[1]
 
 
 3
 In discussing the principles governing issuance of an injunction under the Act, this Court pointed out in Mitchell v. Pidcock, 5 Cir., 299 F.2d 281, 287:
 
 
 4
 'The injunction subjects the defendants to no penalty, to no hardship. It requires the defendants to do what the Act requires anyway-- to comply with the law. True, it subjects them to correction by contempt proceedings. If this is a hardship, they may avoid it by respecting the law. If they choose to take their chances, they would in contempt proceedings still be able to raise questions of law and of good faith as freely as in the original suit for an injunction.'
 
 
 5
 On a motion to vacate such an injunction, we go long with the Seventh Circuit:
 
 
 6
 'We would not approve trading(defendant's) sustained obedience for a dissolution of the injunction. Compliance is just what the law expects.' Walling v. Harnischfeger Corp., 7 Cir., 1957, 242 F.2d 712.
 
 
 7
 The First Circuit is in accord. Goldberg v. Ross, 1 Cir., 1962, 300 F.2d 151.
 
 
 8
 United States v. Swift & Co., 1932, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, enunciated the principles controlling here. In that case the Supreme court reversed the action of district court in relaxing a consent decree entered ten years earlier in an antitrust case. While recognizing the inherent power of a court of equity to modify an injunction, the decision established that it was an abuse of judicial discretion to modify a permanent injunction, absent a 'clear showing of grievous wrong evoked by new and unforeseen conditions.' Id. 286 U.S. at 119, 52 S.Ct. at 464, 76 L.Ed. 999. Compliance over a period of time and general business changes are not new conditions 'so extreme and unexpected as to justify us in saying that (the defedants) are the victims of oppression'. Id. 286 U.S. at 119, 52 S.Ct. at 464, 76 L.Ed. 999. It is important to remember that the decree is a permanent injunction which has already been issued. 'We are not framing a decree. We are asking ourselves whether anything has happened that will justify us now in changing a decree.' Id. 286 U.S. at 119, 52 S.Ct. at 464, 76 L.Ed. 999. Forty years after the injunction was issued in Swift, the defendant tried again. In refusing to modify the decree the district court stressed the continuing vitality of Swift:
 
 
 9
 'In the years since its rendition, the decision has attained the position of a leading case in the field. It has been cited as authoritative in more than one hundred subsequent decisions, both in the lower courts and by the Supreme Court itself. Nothing has been decided since to cast doubt on its continued vitality or to limit its scope. * * * The petitioners therefore bear the burden of proof on their petitions, and the burden is havey. They have no standing to complain, as they have argued, that the government has failed to show any palpable threat of future violations of law on the part of the defendants. The burden on the issue is theirs. Nor is it enough to assert, as they have, that the prohibited activities are not unlawful. They must go further and show that the decree when entered was supported by conditions which have so altered with the passage of time that the restraint can no longer be justified, and that they are suffering injury, without counterbalancing advantage to the public interest, sufficient to move a court of equity to act.' United States v. Swift & Co., N.D.Ill., 1960, 189 F.Supp. 885, 901, 906, affirmed 367 U.S. 909, 81 S.Ct. 1918, 6 L.Ed.2d 1249.
 
 
 10
 For a number of reasons, injunctions under the Fair Labor Standards Act are a fortiori cases for the application of Swift. First, as noted earlier in this opinion, the injunction merely says: 'In the future do what the law requires you to do.' This is no hardship. Second, the injunction has a beneficial effect administratively in enforcing a law of the breadth and scope of the Fair Labor Standards Act:
 
 
 11
 'The injunction shifts the responsibility for compliance onto the employer's shoulders. * * * The Wage and Hour Division cannot reasonably be charged with responsibility of checking back on past violators to make sure that they are obeying the laws. Fairness and economy of administrative effort both dictate that after an employer has once violated the Act he should bear his own responsibility for the future.' Goldberg v. Cockrell, 5 Cir., 1962, 303 F.2d 811, 814.
 
 
 12
 Third, dissolution of the injunction has an adverse effect on the administration of the Act. The Act covers 30 million employees and over a million businesses. If a practice were made of vacating an injunction on a defendant's promise to be good, enforcement of the Act would be weakened and an undue burden of repeated investigation would be placed on enforcement officials, eventually increasing the burden on the courts. See Goldberg v. Mathews, 5 Cir., 1962, 303 F.2d 814, 817.
 
 
 13
 The injunctions in these cases are only distantly related to injunctions issued in actions between private persons. Here they are an essential part of the congressional scheme for making the Fair Labor Standards Act work in an area coterminous with the scope of the Commerce Clause. This is no small undertaking. The three departments are in a common endeavor: It is no less important for the judiciary to use its injunctive power to effectuate the national policy expressed by Congress than for the executive branch to police the Act.
 
 
 14
 The judgment below is reversed with directions to deny the defendants' motions to vacate. The judgment of this Court is without prejudice to the rights of the appellees to file other applications showing changed conditions or peculiar circumstances which, under the principles established in United States v. Swift, & Co., 1932, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, may justify lifting the injunction.
 
 
 
 *
 Of the Tenth Circuit, sitting by designation
 
 
 [1]
 In the findings of fact and conclusions of law the district court stated:
 'Good faith compliance with all of the requirements of the injunction for a sufficient time for the Court to be assured of the honest purpose and intent of the Defendant to sin no more is a necessary prelude to the exercise of such inherent power of the Court to vacate such a judgment. A consent judgment for an injunction cannot be regarded as more sacrosanct. Government by injunction is not favored. It is not good for government or business. These defendants actually consented to the judgments in these cases and thereby fully cooperated in voluntarily submitting to such injunctive process and have steadfastly remained in compliance with the Act and the injunction in every respect. * * * P These injunctions have manifestly served their purpose. The continuation thereof into perpetuality would be oppressive and in excess of any purpose provided by the Act in affording such extraordinary relief in aid of its proper enforcement and observance.' * * * The Court finds as a fact that no need or necessity exists for a continuance of these injunctions in effect and that it is embarrassing to these businesses and is detrimental to the public interest that they be continued in effect. P The spirit of this Act would best be served under the circumstances of lifting this Damocles sword from over the necks of these former offenders and giving them an opportunity to show the metal of their good citizenship by allowing them to voluntarily respect this Act in the future as they have done for so long in the past under the constant and compulsive threat of this dire process. Every presumption must be indulged in movants' favor under the circumstances to the effect that they will ever be and remain good law abiding citizens. Within the purview of Civil Rule 60(b)(5), 'it is no longer equitable that these judgments should have prospective application'.'