COLUMBIA ARTISTS MANAGEMENT INC. ET AL.
*v.* UNITED STATES ET AL.

No. 775.  Decided May 24, 1965.

*Seymour D. Lewis* and *Ralph F. Colin* for appellants.

*Solicitor General Cox, Assistant Attorney General Orrick, Lionel Kestenbaum* and *Elliott H. Moyer* for the United States, and *Theodore R. Kupferman* for appellee Summy-Birchard, Inc.

PER CURIAM.

The motion to affirm is granted and the judgment is affirmed.

MR. JUSTICE HARLAN, MR. JUSTICE STEWART, and MR. JUSTICE GOLDBERG, dissenting.

An examination of the proceedings in this case convinces us that a summary disposition of this matter is not appropriate.

In 1955 the Government brought an antitrust action against appellant Columbia, appellant Community Concerts, Inc. (Columbia's wholly owned subsidiary), and two corporations whose successor is appellee Summy-Birchard, Inc.* Columbia and Summy-Birchard manage professional concert artists, and their affiliates, Community and the Civic Concert Service division of Summy-Birchard, are "concert services," organizing and maintain-

---

*Summy-Birchard is successor to both the National Concert and Artists Corp. and its wholly owned subsidiary, Civic Concert Services, Inc.

ing local nonprofit "audience associations" throughout the country which sponsor concert series. Normally an audience association pays an artist an established fee set by the artist and his manager, out of which the artist's manager retains a share and the concert service also retains a share known as the "margin." The Government's complaint charged a conspiracy to monopolize the business of managing and booking concert artists and the business of forming and maintaining audience associations.

On October 20, 1955, a consent decree was entered by the District Court for the Southern District of New York, the terms of which provide that the managing companies must make their artists available to all concert services at the same rate and that the concert services must make performers available to audience associations without reference to the management of the artists. Paragraph VI (D) of the decree requires that each defendant make available "to any financially responsible concert service any artist managed by such defendant and reasonably available for the desired performance, at the same margin allowed to the defendant or its affiliate concert service by that artist for a performance for the same fee."

Columbia's standard contract with concert services contains a provision, which Columbia argues is required by a collective bargaining agreement among managers and the concert artists' union, prohibiting a concert service from booking an engagement at less than the artist's established fee without the consent of the artist. After Summy-Birchard protested against signing contracts containing this provision on the ground that it constituted illegal resale price maintenance, Columbia petitioned the District Court on July 18, 1963, for a construction of the 1955 consent decree, alleging in part that the decree specifically sanctioned this contract provision and thus insulated it from attack by a party to the decree. The Government and Summy-Birchard were joined as parties. The

District Court held that this contract provision prevented competition among concert services, for it required all of them to be paid the same "margin" for each artist, and concluded that such a provision was illegal. After reargument, the District Court reaffirmed its prior opinion and stated in its final order:

"The provision in Columbia's contract . . . that each engagement before an audience association shall be performed at the artist's established fee constitutes illegal resale price maintenance and is a *per se* violation of Section 1 of the Sherman Act (15 U. S. C. § 1). To the extent that the Final Judgment operates to allow Columbia to set such resale prices, it is illegal and void as contrary to the Sherman Act, and any continued reliance by Columbia upon such portion or portions of the Final Judgment will not be construed by the Court to be in any way valid."

Columbia appeals from this judgment claiming that it constitutes a modification of the 1955 consent decree and that the District Court is without power to modify the decree without Columbia's agreement.

I.

In our view there is substance to Columbia's contention that the District Court modified the 1955 consent decree. As we read the District Court's opinion, that court held that the 1955 decree affirmatively sanctioned the use of the contract provision, and then went on to modify the decree, invalidating that portion of the decree which permitted Columbia to include the provision at issue in its contracts. The District Judge stated in his original opinion:

"The scheme of the concert service business conducted by Community and the Civic division of Summy-Birchard which is embodied in the decree

clearly envisions that the artist or his manager will be able to control the ultimate price paid by the 'consumer'—audience association, impresario, or whoever assumes the risk of 'producing' a show. Were this not so, the definition of 'margin' in the decree would be meaningless. Since this court by its decree—albeit a consent order—has sanctioned *pro tanto* this structuring of the industry, it should not be slow to consider charges of illegality against the system."

The District Judge suggested that Summy-Birchard's answer might be treated as a "petition for declaratory judgment" or a "petition for modification." After discussing whether or not the contract provision constituted resale price maintenance, he concluded by stating:

"Thus, insofar as the decree-imposed requirement of margin operates to allow Columbia to set resale prices, the decree is illegal and void as contrary to the letter and policy of the Sherman Act, and this court will not construe Columbia's continued reliance upon that portion of the decree to be in any way valid."

The District Judge characterized what he had done as "[i]nvalidation of . . . part of the consent decree." The District Court's opinion on rehearing states, "The opinion of November 19 is accordingly reaffirmed," and the judgment of the District Court, set out above, states that "[t]o the extent that the Final Judgment operates to allow Columbia to set such resale prices, it is illegal and void as contrary to the Sherman Act." In our view the language of the opinion and judgment of the District Court conclusively shows that the court modified the 1955 consent decree despite Columbia's opposition to such modification.

We believe that the modification of a previously entered consent decree under the circumstances present here raises

substantial questions of law. This Court has held that a consent decree ordinarily may not be modified without the consent of the parties involved. In *United States* v. *Swift & Co.,* 286 U. S. 106, 119, Mr. Justice Cardozo stated for the Court: "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned." See *United States* v. *International Harvester Co.,* 274 U. S. 693; *Ford Motor Co.* v. *United States,* 335 U. S. 303. While the Court has allowed modifications in consent decrees upon occasion, see *Chrysler Corp.* v. *United States,* 316 U. S. 556; cf. *Hughes* v. *United States,* 342 U. S. 353, a showing of changed circumstances is usually necessary. Whether a modification of the consent decree was proper in this case, where no changed circumstances were claimed, should not be determined by this Court summarily. Additionally, the District Court's determination that Columbia's contract provision constitutes resale price maintenance prohibited by the Sherman Act, 26 Stat. 209, raises substantial issues of antitrust law which we believe also ought to be briefed and argued.

## II.

Apart from what has already been said, there is another reason why this case should not be dealt with summarily. If the District Court's action is not viewed as a modification of the decree, but rather as a determination that the decree neither specifically sanctioned nor prohibited Columbia's contract provision, the court's judgment must be viewed as a declaratory judgment that Columbia's conduct violated the Sherman Act. In that event no appeal lies to this Court, for the Expediting Act, 32 Stat. 823, as amended, 15 U. S. C. § 29, allows direct appeals to this Court only in civil actions "wherein the United States is complainant." If appellant is appealing from a declar-

atory judgment, this case should be transferred to the Court of Appeals for the Second Circuit. If the Court is holding by its action that the case is properly here because of the fact that the 1955 action was commenced by the Government, then the case raises substantial questions as to the scope of the Expediting Act which should be resolved only after plenary consideration. See *Shenandoah Valley Broadcasting, Inc.* v. *ASCAP*, 375 U. S. 39.

We would therefore "postpone jurisdiction" and set the case for argument.

MR. JUSTICE DOUGLAS took no part in the consideration or decision of this case.