**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**THERMODYNAMICS, INC., a Colorado corporation, Severt H. Reither, Howard B. Maerz, and Robert J. Strawn, Jr., Defendants.**

**Civ. A. No. 9121.**

United States District Court,
D. Colorado.

Oct. 18, 1970.

Donald J. Stocking and Joseph F. Krys, Securities and Exchange Commission, Denver, Colo., for plaintiff.

John M. Cogswell, Denver, Colo., for defendant Robert J. Strawn, Jr.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

On May 7, 1965, this Court issued a permanent injunction enjoining the defendant Robert Strawn, *inter alia*, from offering for sale any securities for which a registration statement filed under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, was not in effect, or for which no exemption was available or granted. Strawn now seeks to vacate that injunction under provisions of Federal Rule of Civil Procedure 60(b).

As defendant's argument is cast, two challenges to the validity of that injunction are raised. He asserts that this Court lacked jurisdiction to issue the injunction. Alternatively, Strawn argues that it is no longer equitable for the injunction to prospectively operate against him. We turn now to a consideration of those contentions.

### I.

In his consent to entry of the injunction, Strawn stipulated that he did not admit any allegations of the complaint filed by the Securities and Exchange Commission (hereafter Commission), and that he had not willfully violated any provision of federal securities law. On the basis of those reservations, defendant now alleges that the Commission failed to make a "proper showing" necessary to support the injunction since no evidence was presented. He further claims that failure deprived us of jurisdiction to proceed. As we view defendant's contentions, two questions are presented: whether the defendant can now assert a lack of jurisdiction against a proceeding to which he previously acquiesced; and, if not, whether he can now collaterally attack the same proceeding.

We think defendant's jurisdictional contention has been answered by the Supreme Court in Swift & Co. v. United States, 276 U.S. 311, 48 S.Ct. 311, 72 L.Ed. 587 (1928). In consideration of a similar argument, that Court held:

It is contended that the consent decree was without jurisdiction because it was entered without the support of facts. The argument is that jurisdiction under the Anti-Trust Acts cannot be conferred by consent; that jurisdiction can exist only if the transactions complained of are in fact violations of the Act; that merely to allege facts showing violation of the anti-trust laws is not sufficient; that the facts must also be established according to the regular course of chancery procedure; that this requires either admission or proof; and that, here, there was no admission but, on the contrary, a denial of the allegations of the bill, and a recital in the decree that the defendants maintain the truth of their answers, assert their innocence, and consent to the entry of the decree without any finding of fact, only upon condition that their consent shall not constitute or be considered an admission. The argument ignores both the nature of injunctions  *  * and the legal implications of a consent decree. The allegations of the bill not specifically denied may have afforded ample basis for a decree limited to future acts. If the court erred in finding in these allegations a basis for fear of future wrong sufficient to

warrant an injunction, its error was of a character ordinarily remediable on appeal. Such an error is waived by the consent to the decree. Clearly it does not go to the power of the court to adjudicate between the parties. 276 U.S. at 327, 48 S.Ct. at 315 (citations omitted).

We note that the consent injunction questioned by the defendant was issued pursuant to 15 U.S.C. § 77t(b), which provides in part:

> Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of [this Act], or of any rule or regulation * * * it may in its discretion, bring an action in any district court of the United States * * * to enjoin such acts or practices, and upon a proper showing a permanent * * * injunction * * shall be granted without bond.

Under that section, we have jurisdiction once it is established that the complaint filed by the Commission has charged a violation of the Securities Act of 1933. S.E.C. v. Bennett & Co., 207 F.Supp. 919 (D.N.J.1962). Fairly construed, the complaint filed in this action met that test. We thus can find no merit to defendant's jurisdictional contention.

■ Whether defendant can attack the "showing" made by the Commission, a question which arises by implication from his assertion, is dependent upon the nature of a consent judgment. While such a judgment has its inception in an extra-judicial agreement, the Supreme Court has held that:

> It is a judicial function and an exercise of the judicial power to render judgment on consent. A judgment upon consent is 'a judicial act'. Pope v. United States, 323 U.S. 1, 12, 65 S.Ct. 16, 22, 89 L.Ed. 3 (1944).

*See also* Hot Springs Coal Co. v. Miller, 107 F.2d 677 (10th Cir. 1940). As such, it is not "a mere authentication or recording of that agreement," and it "involves a determination by the chancellor that it is equitable and in the public interest." United States v. Radio Corporation of America, 46 F.Supp. 654, 655 (D.Del.1942), appeal dismissed 318 U.S. 796, 63 S.Ct. 851, 87 L.Ed. 1161; *see also* United States v. Southern Railway Co., 278 F.Supp. 60 (W.D.N.C.1967). By approving the consent judgment, the court is adjudicating the plaintiff's right to relief and its extent, both of which are essential elements of any judgment. A. D. Juilliard & Co. v. Johnson, 166 F. Supp. 577 (S.D.N.Y.1957). It merely excuses the plaintiff from making a supporting record, and relieves the court from making findings and drawing conclusions. Thus, the decree entered has the same force and effect as any other judgment, and is a final adjudication on the merits. Nashville C. & St. L. R. Co. v. United States, 113 U.S. 261, 266, 5 S. Ct. 460, 28 L.Ed. 971 (1885); Utah Power & Light Co. v. United States, 42 F.2d 304 (Ct.Cl.1930); A. D. Juilliard & Co. v. Johnson, *supra*.

■ Final judgments at law are conclusive between the parties on those issues reached by the litigation. A similar rule has been stated for equitable consent decrees:

> For a consent decree, within the purview of the pleadings and the scope of the issues, is valid and binding upon all parties consenting, open neither to direct appeal nor collateral attack. 'A fortiori, neither party can deny its effect as a bar of a subsequent suit on any claim included in the decree.' Curry v. Curry, 65 App.D.C. 47, 79 F. 2d 172, 174 (1935).

*See also* A. D. Juilliard & Co. v. Johnson, *supra*. The only exception to this rule of conclusiveness is that such a judgment can be attacked by a showing of fraud, Tilton v. Cofield, 93 U.S. 163, 23 L.Ed. 858 (1876); otherwise, "whether right or wrong [it] is not subject to impeachment in its application to the conditions that existed at its making." United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). Since defendant has raised no

allegation of fraud, we find that he is foreclosed from attacking collaterally the sufficiency of the showing necessary to support the injunction.

## II.

Defendant's second contention, the one upon which he places primary reliance, is that it is no longer equitable for the injunction to have prospective application.

In support of this argument, Strawn adduced the following facts by affidavit and oral testimony:

(1) That he was denied loans, although a finance officer of the bank stated that he could not be sure the injunction was the cause of the denial, and that he, in fact, was in favor of granting the loans;

(2) That he was prevented from furthering his business career by becoming a member of a board of directors because the injunction would hamper his ability to authorize the issuance of stock;

(3) That he was unable to raise needed capital for his business through the sale of stock since the Commission refused to grant him a waiver which would have enabled him to make a "Regulation A" offer;

(4) That since the issuance of the injunction, he has continually complied with federal securities law; and

(5) That he has a reputation for good citiznship.

■ We note initially that defendant is quite correct in asserting that we have the power to modify or vacate a permanent injunction as a corollary of our duty to supervise and enforce that order. *See* United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460 (1932).

The *Swift* case is the seminal pronouncement concerning the modification of consent injunctions and, we think, applicable to a Rule 60(b) proceeding, such as the one before us. *See* Morse-Starrett Products Co. v. Steccone, 205 F.2d 244 (9th Cir. 1953). The Supreme Court there stated the test which must be met in order to modify such a decree at the defendant's behest as "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions, * * *" 286 U.S. at 119, 52 S.Ct. 460, at 464, 76 L.Ed. 999.

■ Against this background, the defendant asserts his continued compliance with federal securities law as sufficient to invoke our equitable discretion. We disagree. Since the purpose of the litigation, in the parlance of *Swift*, was to compel obedience to those laws, defendant's compliance merely demonstrates the effectiveness of the injunction. It does not show its purpose has been fulfilled. As stated by Walling v. Harnischfeger Corp., 242 F.2d 712, 713 (7th Cir. 1957), "[w]e would not approve trading * * * sustained obedience for a dissolution of the injunction. Compliance is what the law expects."

In this regard we note the recent statement by the Supreme Court in United States v. United Shoe Machinery Corp., 391 U.S. 244, 248, 88 S.Ct. 1496, 1499, 20 L.Ed.2d 562 (1968), a decision which reaffirmed the *Swift* holding, that

> *Swift* teaches that a decree may be changed upon an appropriate showing, and it holds that it may *not* be changed in the interest of the defendants if the purposes of the litigation as incorporated in the decree * * * have not been fully achieved. (Emphasis in original.)

*See also* Chrysler Corp. v. United States, 316 U.S. 556, 62 S.Ct. 1146, 86 L.Ed. 1668 (1942), holding that the time for compliance with an injunction entered by consent may be extended to further the purposes of the litigation. It is our judgment, and clearly the implication from *Swift* and *United Shoe*, that compliance is not "an appropriate showing".

Likewise, the length of time the defendant has been in compliance, in this case five years, is no ground for relief. United States v. Swift & Co., *supra;* S. E. C. v. LeBrock, 245 F.Supp. 799 (S.D.N.Y.1965). Also, given the objective of continued compliance as a means

of safeguarding the public interest, neither of these factors is a "new and unforeseen" condition which would merit an exercise of our equitable discretion.

■ Turning our attention to other factors the defendant advanced for our consideration, we are unable to say that he suffered a "grievous wrong". It is entirely possible that the inability to negotiate loans or sit as a board director hampered defendant's business operations, but we are again guided by the *Swift* decision, which noted that:

> No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are victims of oppression. 286 U.S. at 119, 52 S.Ct. at 464.

In this regard, we note that the defendant has merely been told to do what the law requires be done, and that is no hardship. *E. g.,* Wirtz v. Graham Transfer & Storage Co., 322 F.2d 650 (5th Cir. 1963). This follows even more forcefully since, under Rule 252(c) (4), promulgated by the Commission under Regulation A, the defendant individually can now utilize the exemption available under that provision since the requisite five years have elapsed, or can offer any securities duly registered with the Commission.

As the *Wirtz* case noted, sound public policy supports what appears at first blush to be a harsh result. Summary contempt powers available to the courts provide an effective and expeditious method for policing the Act, thereby protecting the investing public. As explained in *Wirtz*, the permanency of the injunction has another valuable feature:

> [D]issolution of the injunction has an adverse effect on the administration of the Act * * * If a practice were made of vacating an injunction on a defendant's promise to be good, enforcement of the Act would be weakened and an undue burden of repeated investigation would be placed on enforcement officials, *eventually increasing the burden on the courts.* 322 F.2d at 653 (emphasis in original).

Even assuming that the defendant has demonstrated some hardship, neither those considerations advanced nor Strawn's good citizenship, which we do not question, is a "new and unforeseen" condition or changed circumstance that justifies relief. *See* Coca-Cola v. Standard Bottling Co., 138 F.2d 788 (10th Cir. 1943), where a total change in business competition, coupled with the generic use of "cola", was held a sufficient change in circumstances to justify modification. *See also* Columbia Artists Management, Inc. v. United States, 381 U.S. 348, 85 S.Ct. 1553, 14 L.Ed.2d 679 (1965); System Federation v. Wright, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961).

It must be recognized that some untoward consequences are the inevitable result of most injunctions. That is all the defendant has been able to show, and we think it insufficient under *Swift*. We sympathize with defendant Strawn, but agree with the analysis in Humble Oil & Refining Co. v. American Oil Co., 405 F.2d 803 (8th Cir. 1969), in which the court declined to modify an injunction imposed thirty years earlier. That court noted the Supreme Court, in opinions subsequent to *Swift,* and including *United Shoe,* has given "no indication of any retreat from the requirements of *Swift*." 405 F.2d at 813. What the eighth circuit thought necessary to modify an injunction bears repeating:

> Placed in other words, this means for us that modification is only cautiously to be granted; that some change is not enough; that the dangers which the decree was meant to foreclose must almost have disappeared; that hardship and oppression, extreme and unexpected, are significant; and that the movants' task is to provide close to an unanswerable case. To repeat: caution, substantial change, unforeseenness, oppressive

hardship, and a clear showing are the requirements. 405 F.2d at 813.

Speaking as we do in the penumbra of *Swift* and *United Shoe*, we cannot say that the dangers meriting the issuance of the present injunction "have been attenuated to a shadow." Defendant has not met the burden of clearly demonstrating that it is inequitable for the injunction to continue to operate prospectively.

It is therefore

Ordered that defendant's motion to vacate be and the same hereby is denied.