James D. **HODGSON**, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

N. A. **HOTARD**, Individually, and d/b/a Riverside Laundry & Cleaners, Defendants-Appellees.

No. 30422
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 11, 1971.

Bessie Margolin, Atty., L. H. Silberman, Peter G. Nash, Solicitors of Labor, Carin Ann Clauss, Helen W. Judd, Betty Jo Christian, Attys., U. S. Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Solicitor, W. T. Truett, Atty., John W. Stokes, Jr., U. S. Atty., Allen L. Chancey, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellant.

N. A. Hotard, pro se.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

The Secretary of Labor appeals from the District Court's dismissal of his petitions for enforcement of an injunctive decree and for a judgment of civil contempt against Hotard. Contending that Hotard failed to prove his inability to comply with the court's judgment issued pursuant to section 17 of the Fair Labor Standards Act,[1] the Secretary challenges the District Judge's determination that the Secretary has the burden of proof in these civil contempt actions under the Act and failed to carry it here. We reverse.

In its original decree, the District Court restrained Hotard from continuing to withhold statutory wages due

---

1. 29 U.S.C.A. §§ 201–219. Section 17 provides:

The district courts * * * shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a) (2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter * * *. 29 U.S.C.A. § 217.

twelve of his former employees. The decree required payment to the Secretary within twenty days. After Hotard failed to make payment the Secretary petitioned the court for an order enforcing its decree. The court commenced its hearing on February 13, 1970, and then granted a continuance. Subsequently the Secretary filed a supplemental petition in which he requested that Hotard be adjudged in civil contempt and be directed to pay compensatory damages to the Secretary in behalf of the employees.[2] Following another hearing on April 1, 1970, the District Judge dismissed both petitions. The sole ground for dismissal was the Secretary's failure to prove Hotard's ability to pay the amounts required by the court's initial judgment.

During the hearings held before and after the court issued its first judgment, the Secretary produced abundant evidence and testimony pertinent to Hotard's financial condition. His net worth was almost a half-million dollars in January 1969. According to his own financial statement, filed with the Commercial Bank of Daytona Beach on January 31, 1969, Hotard's assets amounted to $468,000; his liabilities were only $16,-500. Among the assets listed were life insurance policies with a cash surrender value of $75,000, stocks and bonds valued at $3,000, a laundry, a home in New Smyrna Beach valued at $40,000, other realty in New Smyrna valued at $15,000, and 500 acres of land valued at $150,000. The "assessed value" of the laundry plant was $39,940.

The evidence revealed that Hotard operated a laundry and dry cleaning business in Daytona Beach, Florida, for sixteen years. In June 1969 the Labor Department investigated Hotard's business and advised him that several of his employees were receiving pay which was below the minimum requirements of the Fair Labor Standards Act. Hotard then refused to comply with the Act in the future conduct of his business. As a result, on June 25, 1969, the Secretary initiated a section 17 action, which culminated in the District Court's restraining order.

When the Secretary filed his section 17 complaint, Hotard abruptly closed his business and advertised the laundry building and equipment for sale at public auction. The Secretary, informed that Hotard might never pay any judgment entered against him, attempted to enjoin the sale until the trial had concluded. His effort was unsuccessful, and the auction was held on September 22 and 23, 1969. Hotard failed to sell his business real estate during the auction. However, auction and pre-auction equipment sales totalled approximately $8,200: Hotard paid the auction company $5,000 and admittedly kept $3,200. He claimed that he used the proceeds to pay taxes and business debts, but failed to offer documentary evidence to substantiate this allegation. Indeed, the record shows that at least some of the $3,200 was transferred to his wife. Specifically, on October 16, 1969, Hotard deposited a $1,613 check from the Tillman Laundry Company, which had purchased some equipment at the auction, in his business account. On October 23, 1969, he issued his wife a check for $1,700 from the same account, leaving a balance of $2.09. Hotard's wife then put the check into her personal checking account.

Hotard made other transfers immediately after the District Judge's announcement from the bench, on November 4, 1969, that he would enjoin the continued withholding of unpaid wages due Hotard's employees as a result of his minimum wage and overtime violations. On November 5, 1969, Hotard recorded a deed transferring all his business realty from himself as sole owner to himself and his wife. Prior to

---

2. The Secretary also requested compensation for his investigatory, legal, and miscellaneous expenses incurred in prepara-

tion and presentation of the supplemental petition for enforcement.

this transfer, Hotard was the sole owner under a warranty deed, dated July 20, 1953. Although the transfer deed to his wife was purportedly signed on November 15, 1956, (remaining unrecorded, Hotard claimed, only because his wife could never afford the $5 recording fee), Hotard represented himself as sole owner on numerous occasions during the thirteen-year interim. On November 6, 1969, Hotard's joint bank account was closed; the balance of $613.42 was transferred to his wife's personal account in the same bank. The wife also had an account in another bank, which refused to produce any of its records. All these transfers occurred before the District Court entered its original decree on December 9, 1969.

When the Secretary petitioned for enforcement of the District Court's decree restraining the continued withholding of $6,283.44 in unpaid wages, Hotard's sole defense was that he had "no money" or property "in his personal name only" and that he had no success in borrowing money. Relying on his testimony that his only income was a monthly Social Security check, Hotard offered no documentary evidence to support his defense.

To rebut Hotard's averments, the Secretary proved that Hotard also received $225 a month rental from the laundry plant; this money was deposited in his wife's personal account. Moreover, the Secretary introduced photocopies of two automobile registration forms listing Hotard as a joint owner, contradicting his claim that these cars belonged solely to his wife. The Secretary also established that at least one bank in the Daytona Beach area had been willing to lend Hotard money. Hotard rejected the loan because the interest rates were allegedly too high. Other evidence revealed that Hotard had no difficulty in securing credit, that he had frequently received loans for amounts up to $7,000.

As noted above, Hotard produced no evidence to substantiate his claimed credit problems. Furthermore, he never asserted that he had disposed of his life insurance policies, which in January 1969 had a cash surrender value of $75,000. Finally, he failed to manifest how or why—or indeed whether—he had disposed of stocks and bonds listed on his January financial statement.

The District Court, having considered this record, concluded that Hotard was unable to pay the $6,283.44 due under its restraining order of December 9, 1969. Therefore, it refused to hold Hotard in contempt or to compel him to comply with that order. In the court's opinion, Hotard's sworn testimony alone sufficed to establish a *prima facie* defense to the Secretary's charges. In his dismissal order, the District Judge concluded that the Secretary had "failed to prove defendant's ability to pay."

Apparently the court perceived no wrong in Hotard's transfers of assets to his wife. Nor did the District Judge believe that Hotard should be required to borrow money or to secure funds in any other way so that he might discharge his obligations under its restraining order.

 The District Court's refusal to hold Hotard in contempt rests on the erroneous assumption that a judgment entered pursuant to section 17 of the Fair Labor Standards Act is merely a money judgment, which under Florida law is enforceable only by levy or execution against Hotard's property. The fallacy implicit in this assumption is its premise that no public right is involved. In Wirtz v. Jones, 5 Cir. 1965, 340 F.2d 901, this Court said:

> The history and purpose of the Fair Labor Standards Act and of § 17, both in its wording and in its relationship to the other sections of the Act, make it abundantly clear that § 17 was designed and enacted as a necessary measure to assure the effective and uniform compliance with and adherence to a public policy, relating to wage standards for labor, adopted in the National interest.

> \* \* \* \* \* \*

> [*T*]*he purpose of the injunction to restrain the withholding of wages due*

*is not to collect a debt owed by an employer to his employee but to correct a continuing offense against the public interest.* It is true that as a result, money may pass from the employer into the pocket of the employee or, if he is not available, then into the coffers of the United States Treasury, but that enforced payment, which must be made even if the employee or his representatives or heirs no longer exist to claim it, is simply a part of a reasonable and effective means which Congress, after trial and error, found it necessary to adopt to bring about general compliance with § 15(a) (2). * * * *The difference between restraining the withholding of past due wages and punishing for contempt for violation of an injunctive order restraining future withholding of wages is not significant in the framework of this legislation.* The order to pay withheld, but earned, remuneration is to redress a wrong being done to the public good.

*Id.* at 903–905 (footnote omitted) (emphasis supplied); *accord,* Shultz v. Parke, 5 Cir. 1969, 413 F.2d 1364, 1370. *See also* Beaird & Sutter, "Annual Fifth Circuit Survey: Labor Law and Related Social Legislation," 21 Mercer L.Rev. 617, 650–52 (1970). *Jones* was not a contempt proceeding. Nevertheless, its pronouncements with regard to the enforcement of national labor policy are applicable since the filing of a civil contempt petition is not the institution of an independent proceeding but is part of the original cause. Wirtz v. Ocala Gas Co., 5 Cir. 1964, 336 F.2d 236, 242; *see* McComb v. Jacksonville Paper Co., 1949, 336 U.S. 187, 192, 69 S.Ct. 497, 93 L.Ed. 599.

■ That a civil contempt proceeding is a proper means for ensuring compliance with, and effecting the policies of, the Fair Labor Standards Act seems indisputable. Fleming v. Warshawsky & Co., 7 Cir. 1941, 123 F.2d 622, 625–626; Wirtz v. Compania de Servicios Electricos, S.A., D.C.Z. 1967, 304 F.Supp. 697, 702; Durkin v. Bennett, N.D.Ala.1962,

206 F.Supp. 326, 328; In re Bennett, N.D.Ala.1962, 206 F.Supp. 354. Furthermore,

[t]he absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. * * * Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act. * * * An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions. And the grant or withholding of remedial relief is not wholly discretionary with the judge * * *. The private or public rights that the decree sought to protect are an important measure of the remedy.

McComb v. Jacksonville Paper Co., *supra,* 336 U.S. at 191, 69 S.Ct. at 499. In the *McComb* opinion, the Supreme Court also commented:

If the court is powerless to require the prescribed payments to be made, it has lost the most effective sanction for its decree and a premium has been placed on violations. * * * It is the power of the court with which we are dealing—the power of the court to enforce compliance with the injunction which the Act authorizes, which the court has issued, and which respondents have long disobeyed.

*Id.* at 194–195, 69 S.Ct. at 501 (footnote omitted).

Certainly the Court's compelling words are pertinent to the present controversy. By defining its original order as a mere money judgment, the District Court has abdicated its proper role as a protector of national labor policy legislated in the Fair Labor Standards Act. *See* Fleming v. Warshawsky & Co., *supra,* 123 F.2d at 625. In so doing, the court threatens to weaken public confidence in the efficacy of this Act, as well

as the confidence of those former employees whom Hotard has wronged. We cannot allow such an abuse of judicial discretion. *See* Wirtz v. Graham Transfer & Storage Co., 5 Cir. 1963, 322 F.2d 650, 653.

■ This is not to say that an employer could never successfully defend against a civil contempt petition. However, it is important to place the effort required on his part in proper perspective. Once the Secretary has proved that an employer is delinquent in complying with a section 17 order, he has established a *prima facie* case for civil contempt. The Secretary does not bear the burden of showing that the employer is able to comply with the earlier judgment. Instead, the employer must show that he cannot meet the demands of the court. The employer's burden is heavy. Indeed, it should be no lighter than that shouldered when an employer tries to prove that his business is exempt from the Act's minimum standards. *See, e. g.,* Shultz v. First Victoria National Bank, 5 Cir. 1969, 420 F.2d 648, 654 n. 8; Shultz v. Instant Handling, Inc., 5 Cir. 1969, 418 F.2d 1019, 1024; Foremost Dairies, Inc. v. Wirtz, 5 Cir. 1967, 381 F.2d 653, 656 n. 4, cert. denied *sub nom.* Home Town Foods, Inc. v. Wirtz, 1968, 390 U.S. 946, 88 S.Ct. 1031, 19 L.Ed.2d 1134; Wirtz v. C & P Shoe Corp., 5 Cir. 1964, 336 F.2d 21, 28; Wirtz v. Campus Chefs, Inc., N.D.Ga. 1968, 303 F.Supp. 1112, 1116. To successfully establish a defense, the employer must "plainly and unmistakably" manifest the correctness of his cause. Arnold v. Ben Kanowsky, Inc., 1960, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393; *cf.* Wirtz v. Graham Transfer & Storage Co., *supra,* 322 F.2d at 652–653 (motion to vacate injunction under Act). This is particularly true when, as here, the defense—*i. e.,* financial inability to comply—rests on facts which are peculiarly within the defendant's own knowledge. *See* Allstate Finance Corp. v. Zimmerman, 5 Cir. 1964, 330 F.2d 740, 744; *cf.* McPhaul v. United States, 1960, 364 U.S. 372, 379, 81 S.Ct. 138, 5 L.Ed.2d 136; United States v. Fleischman, 1950, 339 U.S. 349, 360–364, 70 S.Ct. 739, 94 L.Ed. 906.

■ Clearly, in light of these analogous precedents, Hotard has not yet successfully borne the burden of proving his financial inability to comply with the District Court's original judgment. Indeed, the sole evidence offered was his unsubstantiated testimony that he had no money or property "in his personal name only." Even if this were true, it does not establish financial inability, since it does not exclude the probability that Hotard holds property jointly with others, including his wife. Moreover, the averment is inadequate to overcome the presumption of ample financial resources following from Hotard's sworn financial statement, filed only months before, that his net worth was $451,500 —approximately seventy times the amount which the District Court ordered him to pay.

At least, Hotard must explain precisely what happened to each of the assets listed on his financial statement. At present he has made no such accounting. Although Hotard did close his business and auction the equipment, there is no indication that these events substantially affected his net worth. In fact, the majority of assets included in his January financial statement were unrelated to the laundry business; several parcels of realty and a number of life insurance policies, as well as stocks and bonds, were listed. Hotard claimed these assets as his property alone.

■ Hotard now says that he holds all realty with his wife in an estate by the entirety. Nevertheless, he has produced no evidence—with one exception. —that his wife has any interest in the properties listed on his financial statement. The single exception is the laundry plant, which he transferred to himself and his wife—on the day after the District Judge's orally communicated decision to enter a restraining order—by

recording a warranty deed that he allegedly executed years before. Under these circumstances it is doubtful that the recording created an estate by the entirety under Florida law. *See* Fla.Stat. Ann. § 689.11(1), (3). Thus the District Court could have ordered Hotard to satisfy the judgment in any way possible, even if he had to sell or mortgage his interest in the property. *Cf.* NLRB v. Deena Artware, Inc., 1960, 361 U.S. 398, 413–414, 80 S.Ct. 441, 4 L.Ed.2d 400 (Frankfurter, J., concurring); McComb v. Jacksonville Paper Co., *supra*, 336 U.S. at 192–193, 69 S.Ct. 497; Wirtz v. Ocala Gas Co., *supra*, 336 F.2d at 242–243; Fleming v. Warshawsky Co., *supra*.

■ Furthermore, Hotard failed to introduce similar deeds pertaining to any of the other realty listed on his financial statement. He also offered no proof that he had disposed of his life insurance policies or his stocks and bonds. Finally, Hotard admitted that he was currently receiving a $225 monthly rental check, payment for use of his business property. Absent proof to the contrary, Hotard's ability to satisfy the judgment should have been established by such evidence. Consequently Hotard must prove that he has insufficient funds to satisfy the judgment. If successful, he must then prove that in disposing of his property he did not act to circumvent the District Court's contemplated restraining order. NLRB v. Deena Artware, Inc., *supra*.

We need not prejudge the merits here. Nevertheless, unless Hotard "plainly and unmistakably" substantiates his claimed inability, the District Court may grant whatever "sanction [is necessary] to enforce compliance." McComb v. Jacksonville Paper Co., *supra*, 336 U.S. at 191, 69 S.Ct. at 499; *see* Wirtz v. Graham Transfer & Storage Co., *supra*, 322 F.2d at 653. Certainly civil contempt is within the realm of reasonable sanctions.

Reversed and remanded.