W. J. USERY, Jr., Secretary of Labor, United States Department of Labor, Plaintiff,

v.

GOLDEN GEM GROWERS, INC. and Don Blocker, Defendants.

No. 75–30–Civ–OC.

United States District Court, M. D. Florida, Ocala Division.

July 15, 1976.

## OPINION, FINAL JUDGMENT AND PERMANENT INJUNCTION

CHARLES R. SCOTT, District Judge.

This action by the Secretary of Labor, pursuant to 7 U.S.C. § 2041 *et seq.* (Supp. 1974), was tried by the Court sitting without a jury on April 26 and 27, 1976. The secretary contended that defendant Golden Gem Growers, Inc. (Golden Gem), employed farm labor contractors who did not possess certificates of registration from the Secretary of Labor, in violation of 7 U.S.C. § 2043(c); that defendant Don Blocker (Blocker) performed the services of a farm labor contractor without the requisite certificate of registration pursuant to 7 U.S.C. §§ 2043(a) and 2045(a); and that defendant Blocker failed to disclose, and post notices of, the terms and conditions of employment for each migrant worker, as required by 7 U.S.C. §§ 2045(b) and (c). The secretary sought a permanent injunction to prevent future violations of the Act. Defendants alternatively argued (1) that Blocker is not a person within the meaning of 'farm labor contractor' as defined in Section 2042(b) of the Act; and (2) that, even if Blocker were a farm labor contractor, he is included within the exemption provided by Section 2042(b)(3) of the Act.

### FINDINGS OF FACT

Golden Gem Growers, Inc., is a Florida corporation with its principal place of business in Umatilla, Lake County, Florida. Its business is the processing of citrus fruit into frozen concentrates, fresh fruit and by-products which are shipped to points outside of the State of Florida. The shareholders of Golden Gem Growers, Inc., are individual growers, and Golden Gem, the corporation, harvests and processes the citrus fruit of each shareholder-grower, in accordance with grower marketing agreements.

Don Blocker is a resident of Crescent City, Florida, where he is employed by Golden Growers, Inc. Blocker has been so employed for the last three seasons. He recruits, hires and furnishes migrant work-

Bobbye D. Spears, Regional Sol., U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Norman F. Burke, Van Den Berg, Gay & Burke, Orlando, Fla., for defendant.

ers to pick citrus fruit for Golden Gem and he usually transports most of the workers to the groves daily. Each workday morning during the season Blocker leaves his home in Crescent City, driving a bus owned by Golden Gem, recruiting, hiring and transporting migrant workers for his crew. This takes about one hour per workday. While a work crew usually consists of 15 to 20 workers, the specific migrant workers who comprise a crew may vary from day to day. Golden Gem exercises no control over how Blocker recruits, hires, transports or otherwise furnishes migrant workers for his crews in the citrus groves. The groves in which Blocker and his crews have been working this season are located primarily around Umatilla, Florida, about 45 miles from Crescent City (where Blocker lives), thus requiring approximately one hour of driving time each way for him. At the groves Blocker's responsibility is to supervise his crews and operate a loading machine. He keeps records of the number of boxes of citrus picked by each of his workers. A supervisor for Golden Gem visits the groves daily to pick up his records and to check on the harvesting progess. The supervisor stays about 15 minutes at the groves and he is the only representative of Golden Gem, other than Blocker, who appears at the groves. Each day, after working in the groves, Blocker drives his crews back to Crescent City and to their homes. He does all this at least five days a week and sometimes on Saturday and Sunday. Altogether, Blocker spends an average of three to four hours per workday recruiting, hiring, furnishing and transporting workers to and from citrus groves for Golden Gem. He hires workers to pick citrus fruit only. The workers are employed during the season, from December to June. The migrant workers also pick citrus for other harvesters besides defendants Blocker and Golden Gem. Further, Blocker testified that many of the workers who comprise his crews travel north to pick apples, potatoes, cherries and beans during the off season in Florida.

As compensation for these activities, Blocker is paid by Golden Gem a specific amount (presently 8¢) per box of citrus picked by his crews. Roy V. Knowles, vice-president in charge of harvesting, Golden Gem Growers, Inc., explained that the rate paid to Blocker is for (1) furnishing crews of pickers to the groves, (2) supervising the crews and (3) preparing the payroll records for each migrant worker who is a member of the crews. For three seasons Blocker has provided crews of migrant workers solely for Golden Gem. He is termed 'a field foreman.' He is paid directly by Golden Gem, who deducts social security and withholding taxes from his pay. He receives equipment, health, accident and life insurance and other benefits without cost to him.

Blocker is not now, and never has been, registered as a farm labor contractor with the United States Department of Labor. Consequently, he does not have a certificate of registration issued by the Secretary of Labor. Golden Gem has actually known during the entire time that it has employed Blocker that he has not been registered with the Secretary of Labor. Blocker has neither disclosed to each worker at the time of hiring, nor posted in a conspicuous place notices of, the terms and conditions of each migrant worker's employment.

## CONCLUSIONS OF LAW

The Court has jurisdiction over the subject matter and parties of this action under 7 U.S.C. § 2041 et seq. The parties have agreed that the workers employed by defendants are engaged in an activity within the scope of 'agricultural employment' as defined by 7 U.S.C. § 2042(d). 7 U.S.C. § 2042(g) provides:

The term "migrant worker" means an individual whose primary employment is an agriculture, as defined in section 203(f) of Title 29 [the Fair Labor Standards Act of 1938], or who performs agricultural labor, as defined in section 3121(g) of Title 26 [the Internal Revenue Code of 1954], on a seasonal or other temporary basis.

The 1974 amendment of Section 2042(g) contemplates two types of seasonal migrant workers (1) those who travel in interstate

commerce from one state to another from one crop's season to another, and (2) those who reside permanently in the agricultural area where they work. Hence, the 1974 amendment expanded the definition of 'migrant workers' to include those workers who travel intrastate only, working in a fairly constant geographical area, in a field of agricultural employment affecting interstate commerce, as specified by Section 2042(d).

■ 7 U.S.C. § 2053 authorizes the Secretary of Labor to promulgate rules and regulations that he deems necessary to implement the purposes of the Act. Pursuant to that authorization, the secretary has further specified the definition of 'migrant workers' by regulations. 29 C.F.R. §§ 41.13 and 41.14. Section 41.13 includes persons who perform agricultural work on a seasonal or otherwise temporary basis, regardless of their primary employment, and regardless of whether they are itinerants who travel across and throughout the state. Section 41.14 includes persons who travel from one seasonal activity to another performing agricultural work in different areas, on different crops, during different seasons, even though such employment may constitute a major portion of the calendar year. Such agricultural employment is still performed on a seasonal basis, as provided by 7 U.S.C. § 2042(g), because it is performed during distinct and discontinuous periods or seasons of the year. These interpretative regulations are a proper exercise of the secretary's discretion. *Idaho Sheet Metal Works v. Wirtz,* 383 U.S. 190, 208, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966), *reh. den.* 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305 (1966). While they are not binding on the courts, *Federal Maritime Commission v. Seatrains Lines, Inc.,* 411 U.S. 726, 745–46, 93 S.Ct. 1773, 36 L.Ed.2d 260 (1973); *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), so long as they are neither legally untenable, *Jewell Ridge Coal Corp. v. Local 6167, UMW,* 325 U.S. 161, 169, 65 S.Ct. 1063, 89 L.Ed. 1534 (1945), nor inconsistent with the congressional purpose of the Act, *Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974), the

interpretations of the agency charged with administering an Act are entitled to great deference and to be regarded as expressing the will of the Congress that enacted the statute. *United States v. Pennsylvania Industrial Chem. Corp.,* 411 U.S. 655, 674, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); *Griggs v. Duke Power Co.,* 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). They will not be set aside or disturbed lightly, and both the courts and litigants may properly look to them for guidance. *Skidmore v. Swift, supra,* 323 U.S. 134 at 140, 65 S.Ct. 161.

Blocker's testimony indicates that he recruits, hires and transports agricultural workers solely for picking citrus fruit between the months of December and June, the Florida citrus season. Furthermore, after the citrus season, many of those workers travel out of the state to pick other crops during their seasons. Clearly, such workers are employed in agriculture on a seasonal basis and are, therefore, within the definition of 'migrant worker' in Section 2042(g).

■ In the face of denials by Blocker and Golden Gem that Blocker is a farm labor contractor, the initial burden of proof is on the secretary to show that the Act applies to both defendants. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). 7 U.S.C. § 2042(b) and (c) provide:

> (b) The term "farm labor contractor" means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his immediate family) for agricultural employment. . . .
>
> (c) The term "fee" includes any money or other valuable consideration paid or promised to be paid to a person for services as a farm labor contractor.

The evidence uniformly reveals that Blocker recruits, hires, furnishes and transports migrant workers on behalf of Golden Gem. Pursuant to 7 U.S.C. § 2053, the secretary has promulgated a regulation that requires the terms "recruits, solicits, hires, furnishes

or transports," to be given their "ordinary meaning as each is defined in the unabridged edition of Webster's New International Dictionary." 29 C.F.R. § 41.7. Additionally, the Act applies "to any person who engages in or performs one or more of these activities and otherwise meets the definition of a farm labor contractor." *Id.* In short, the use of the word 'or' in Section 2042(b) is inclusive, meaning 'any or all' of the activities listed. They are the activities of a farm labor contractor under the Act, and it is clear that Blocker performs any or all of those activities.

■ Moreover, the secretary has promulgated a regulation providing that the term "fee" includes "any money, checks, securities or property, either personal or real, or other valuable consideration as this term is used for purposes of the law of contracts, paid or promised to be paid, whether as wages, salary, commission or any other method of payment . . . when paid to a person for service as a farm labor contractor." 29 C.F.R. § 41.5. Testimonial evidence indicates that Golden Gem paid Blocker on the basis of the number of boxes picked by each migrant worker as compensation for his services of recruiting, hiring, furnishing, transporting and supervising the workers. Blocker receives further consideration from Golden Gem in the form of equipment, medical, accident and life insurance and other benefits without cost to him personally. Finally, the compensation which Blocker receives from Golden Gem is subject to deductions for social security and withholding taxes, patently income under 26 U.S.C. § 61 (1970). Clearly, the activities performed by Blocker were for a fee as provided by Section 2042(c). Consequently, the Court holds that the secretary has met his burden under the Act and that Blocker is a farm labor contractor as provided by Sections 2042(b) and (c) of the Act.

■ Once the secretary meets his burden of showing that the Act applies to defendants, the burden of proof shifts to them insofar as they seek to avoid the coverage of the Act by means of one of its exemptions. *Corning Glass Works v. Brennan,* *supra,* 417 U.S. at 196, 94 S.Ct. 2223. 7 U.S.C. § 2042(b)(3) provides:

(b) The term "farm labor contractor" means any person, who, for a fee, either or for himself or on behalf of another person, recruits, solicits, hires, furnishes or transports migrant workers, (excluding members of his immediate family) for agricultural employment. Such term shall not include—

(3) any full-time or regular employee of any entity referred to in (1) or (2) above who engages in such activity solely for his employer on no more than an incidental basis.

The evidence is undisputed that Blocker is a full-time and regular employee of Golden Gem and that he performs the activities listed in Section 2042(b) (describing a farm labor contractor) solely for Golden Gem. To that extent, both Golden Gem and Blocker have satisfied the first criterion of the exemption in subsection (3). The second criterion, however, is that the regular, full-time employee, who performs the activities characteristic of a farm labor contractor, must do so "on no more than an incidental basis."

■ The phrase "on no more than an incidental basis" is nowhere defined by the Act. Consequently, the Court must interpret it, and determine whether it applies in this case, on the basis of the factual circumstances presented and the congressional intent inferred from the legislative history. When the 1974 amendment to the Act expanded the application of the statute to intrastate activities, it also provided for an exemption for activities performed "on an incidental basis." The Court must construe the term 'incidental basis', therefore, in view of the plain congressional intent to include those intrastate activities that previously had not been covered by the Act. Several relational factors must be considered. First, the relationship of the amount of time daily spent in performing farm labor contractor activities must be compared to the total amount of daily work time. Second, if a person performs other, additional duties, besides the activities of a

farm labor contractor, the nature of those additional duties must be compared to his farm labor contractor activities. Third, the extent to which an individual is personally and uniquely nonfungible in the performance of his farm labor activities must be compared to the extent to which he is replaceable or substitutable in the performance of his additional duties. Finally, based on the time, nature and uniqueness of a person's performance of both farm labor contractor activities and additional duties, the Court must determine the importance of his farm labor contractor activities in relation to the totality of his duties. To be more than incidental, the activities listed in Section 2042(b) need not be the sole job duties performed by a person. It is sufficient to be more than "on an incidental basis" if under the circumstances the farm labor contractor activities performed are one of the major or principal functions of the individual's job. The test is whether the farm labor contractor's activities listed in Section 2042(b) constitute a substantial amount of his job performance, and not merely a limited portion of it.

■ In this case, the evidence is uncontroverted concerning Blocker's job activities. His duties require him to recruit and hire prospective workers, to transport those workers to the citrus groves, to supervise their work in the groves, to transport them home again and to recruit and hire replacements for any workers who do not continue as members of his crews. Daily, throughout the season, he spends somewhere between four and five hours performing those activities. Although Golden Gem and Blocker both contend that he is merely a supervisor, and that the migrant workers would board any bus and travel to the citrus groves, the evidence indicates that in the initial soliciting, recruiting and hiring, as well as the continued transportation, and replacement recruiting and hiring of workers, Blocker is the prime mover. In fact, the evidence indicates that except for Blocker's uniquely personal success in performing those activities, he would not have his present position with Golden Gem. As a result, the Court holds that Blocker's performance of farm labor contractor activities listed in Section 2042(b) constitutes a substantial part, and one of the principal functions, of his employment with Golden Gem. The Court, therefore, further holds that neither Blocker nor Golden Gem have met the second criterion in Section 2042(b)(3) to exempt him from the Act, and that he is included within the definition of "farm labor contractor" of the Act.

■ Both Golden Gem and Blocker argue that neither one has committed any of the abuses that prompted the 1974 amendment to the Act by Congress. They contend that they have demonstrated a genuine interest in, and concern for, the welfare and safety of the workers. Golden Gem pays the workers directly by check, deducting social security and withholding taxes. Golden Gem provides group health, accident and life insurance, workmen's compensation, a pension plan and automobile liability insurance for the busses in which the workers are transported, all without cost to the workers themselves. Hence, Golden Gem and Blocker argue that they are accidental targets of the legislation, and as such should not be held to be included within its intended coverage. Recently, the Court was confronted with a similar equitable and humanitarian argument advocating just the inverse: that the Court invent an exception to a statute that expressly and unmistakably did not apply to a party in order to allow him to be included within its jurisdiction. What the Court said at that time is equally applicable now:

> It is the responsibility of the Court to interpret and apply law, *United States v. Nixon*, 418 U.S. 683, 703, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Marbury v. Madison*, 5 U.S. 137, 1 Cranch 137, 177, 2 L.Ed. 60 (1803), not to rewrite it. Humanitarian and equitable arguments that would urge the Court to do virtually that are in the wrong forum. They should be addressed to the Congress that enacted the statute.

*Brohl v. Singer Co.*, 407 F.Supp. 936, 939 (M.D.Fla.1976). It is important that the Court use its injunctive power to effectuate

more directly the national policy expressed by Congress in the Act. *Wirtz v. Graham Transfer & Storage Co.,* 322 F.2d 650, 653 (5th Cir. 1963). Enjoining both defendants does not subject either one of them to a penalty or hardship, but merely requires them to do what the Act mandates anyway: to comply with the law. *Dunlop v. Davis,* 524 F.2d 1278, 1280–81 (5th Cir. 1975); *Mitchell v. Pidcock,* 299 F.2d 281, 287 (5th Cir. 1962). The burden of compliance is thus shifted directly to both Golden Gem and Blocker; and the Court expects prompt and faithful compliance by them with the Act and with this injunction. *Maness v. Meyers,* 419 U.S. 449, 458–59, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *United States v. UMW,* 330 U.S. 258, 293, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

It is now, therefore,

ORDERED AND ADJUDGED:

1. Defendants Golden Gem Growers, Inc., and Don Blocker, jointly and severally, their officers, agents, servants, employees, assigns, successors in interest, and all persons acting or claiming to act in their behalf and interests, are hereby permanently enjoined from violating the provisions of the Farm Labor Contractor Registration Act, 7 U.S.C. § 2041 *et seq.* (Supp.1974).

2. Defendant Golden Gem Growers, Inc., is hereby enjoined from employing the services of any farm labor contractor, as defined in 7 U.S.C. § 2042(b), unless such farm labor contractor possesses a certificate of registration from the Secretary of Labor, United States Department of Labor, such registration being effective during the time in which the farm labor contractor is employed by Golden Gem Growers, Inc.

3. Defendant Don Blocker is hereby enjoined from recruiting, soliciting, hiring, furnishing or transporting migrant workers for a fee, or attempting to recruit, solicit, hire, furnish or transport migrant workers for a fee, or to otherwise perform the activities of a farm labor contractor as listed in 7 U.S.C. § 2042(b), unless he shall first obtain a valid certificate of registration from the Secretary of Labor, United States Department of Labor.

4. In the event that defendant Don Blocker obtains a certificate of registration from the Secretary of Labor, he is hereby ordered to carry that certificate of registration with him at all times while performing the activities of a farm labor contractor, and to exhibit it to all persons with whom he intends to deal in his capacity as a farm labor contractor, pursuant to 7 U.S.C. § 2045(a).

5. In the event that defendant Don Blocker obtains a valid certificate of registration from the Secretary of Labor, he is hereby ordered to disclose to each migrant worker at the time of recruitment, as required by 7 U.S.C. § 2045(b), written on forms prescribed by the Secretary of Labor in a language fluent and understandable to each worker, the following information:

(a) The area of employment;

(b) The crops and operations on which the migrant worker may be employed;

(c) The transportation, housing and insurance to be provided to the worker;

(d) The wage rates to be paid to the worker;

(e) The charges to be made by the contractor for his services;

(f) The period of employment; and

(g) The existence of any arrangements with any owner, proprietor or agent of any commercial or retail establishment in the area of employment under which he is to receive a commission or any other benefit resulting from any sale provided to such commercial or retail establishment from the migrant workers whom he recruits.

6. In the event that Don Blocker obtains a certificate of registration from the Secretary of Labor, he is hereby ordered to post in a conspicuous place a written notice of the terms and conditions of employment upon arriving at a given place of employment, as required by 7 U.S.C. § 2045(c).

7. Defendants Golden Gem Growers, Inc., and Don Blocker are hereby ordered to pay the costs of this action.