Ray MARSHALL, Secretary of Labor, United States Department of Labor,

v.

BUNTINGS' NURSERIES OF SELBY-VILLE, INC., and Francisco B. Mireles, Individually, Shingle Landing Road, Showell, Worcester County, Maryland.

Civ. No. HM77–2027.

United States District Court, D. Maryland.

July 27, 1978.

Carin Ann Clauss, Sol. of Labor, Washington, D. C., Marshall H. Harris, Regional Sol., Mark D. Newberger, Atty., Dept. of Labor, Philadelphia, Pa., Russell T. Baker, Jr., U. S. Atty., Catherine C. Blake, Asst. U. S. Atty., D. Maryland, Baltimore, Md., for plaintiff.

John H. Skeen, Jr., David W. Skeen, Baltimore, Md., for Buntings' Nurseries.

Michael S. Libowitz, Baltimore, Md., for Francisco Mireles.

HERBERT F. MURRAY, District Judge.

This is an action brought by the Secretary of Labor pursuant to the Farm Labor Contractor Registration Act of 1963, as amended, 7 U.S.C. § 2041, *et seq.* (hereinafter the Act).

Defendant Buntings is a Delaware corporation with its headquarters located in Selbyville, Delaware, and with its principal places of business at various farm locations in Delaware and Maryland. At all of these locations, defendant engages in the growing of horticultural commodities such as trees, bushes, shrubs, and strawberry and tomato plants. Defendant Mireles is employed full-time by defendant Buntings, working at its various farm locations in Maryland.

The Secretary contends that defendant Buntings' Nurseries of Selbyville, Inc. (hereinafter Buntings) has violated 7 U.S.C. § 2043(c) by employing a farm labor contractor, Francisco B. Mireles, the individual defendant in this case, without determining that Mr. Mireles was registered as required by the Act. The Secretary further contends that defendant Mireles during calendar year 1977 was a farm labor contractor as that term is defined in 7 U.S.C. § 2042(b) and as such was required to register with the Secretary under the terms of 7 U.S.C. § 2043(a) before engaging in the activities of a farm labor contractor. Defendant Mireles also is charged with failure to comply with the terms of 7 U.S.C. §§ 2044(a)(2), (b)(5), (d) and 2045(a) through (e). Although these final violations are quite detailed, plaintiff contends in summary that defendant Mireles failed to have appropriate evidence of proper insurance for vehicles used to transport workers, improperly failed to carry and display to the employees a contractor's registration, and failed to provide the employees with and to post notice of required information on wages, hours, living and working conditions.

Defendants have admitted these underlying facts of noncompliance with the aforementioned provisions of the Act, but have contended by way of a defense that they were under no duty to obey these provisions of the Act because defendant Mireles was not a farm labor contractor within the meaning of the Act during calendar year 1977. Defendants' further defense lies in their contention that the exemptions provided under 7 U.S.C. § 2042(b)(2) and (3) are applicable to the facts of this case.

The Secretary seeks a permanent injunction to prevent any future violations of the provisions of the Act, and the award of costs in his favor. The court has jurisdiction of this action under 7 U.S.C. § 2050a(c), which provides:

If upon investigation the Secretary determines that the provisions of this chapter have been violated, he may petition any appropriate district court of the United States for temporary or permanent injunctive relief.

Before proceeding with the merits of the case, it might be well to refer to the purpose of the legislation as enunciated by Congress in the legislative history, first of the original Act, and then of the 1974 amendments.

When the Act was originally introduced in 1963, the Senate report contained a section under the heading, "Need for Legislation" and the court feels a paragraph under that section is particularly applicable here. In the report, it is stated at page 3691,

Because of the circumstances of migratory farm workers' employment, farm labor contractors or 'crew leaders' as they are frequently called, play a unique and important role in the farm labor market. The relationship between migratory workers and their farm employers is often temporary and impersonal. The labor contractor organizes groups of workers in areas in which they live, establishes contact between them and the growers who are often located in labor shortage areas in other States, and helps to provide continuity of employment. He usually provides the means of transportation for members of his crew, lends them money if necessary during the season, pays them their wages, handles all contacts with the grower and generally supervises the workers on the job. He is, therefore, the individual who has the most continuing relationship with these migrant workers.

When the Congress undertook to amend the Act in 1974, it had this to say in Senate Report Number 93–1295 with regard to the continuing evolution of the farm labor contractor. The language, while slightly dif-

ferent, harkens back to what was said in the 1963 legislative history. The Senate Report stated:

> Although the specific functions of the farm labor contractor, often called a 'crew leader' or 'crew pusher', might vary from job to job, his role essentially remains the same—a bridge between the operator and the worker. In many instances, the contractor is not only the recruiter, hirer, and transporter, but acts as the supervisor, foreman and paymaster as well. In addition, the contractor frequently controls housing and other vital aspects of the workers' everyday needs.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

The first issue to be determined by the court is whether defendant Mireles was a farm labor contractor during calendar year 1977 as that term is defined in the Act. 7 U.S.C. § 2042(b) provides:

> The term 'farm labor contractor' means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding his immediate family) for agricultural employment. . . .

Under this definition the court must decide whether defendant Mireles (1) recruited, solicited, hired, furnished, or transported, (2) for a fee, (3) migrant workers, (4) for agricultural employment.

The Act defines "agricultural employment" to mean "employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or *horticultural commodity* in its unmanufactured state." (Emphasis supplied) It appears clear to the court that the worker-employees of defendant Buntings in this case are engaged in agricultural employment, as their work involves the handling of various horticultural commodities such as trees, shrubs, and plants.

The parties are in dispute as to whether the workers in this case can be classified as "migrant workers." The Act defines the term "migrant worker" as follows:

> The term "migrant worker" means an individual whose primary employment is in agriculture, as defined in section 203(f) of Title 29, or who performs agricultural labor, as defined in section 3121(g) of Title 26, on a seasonal or other temporary basis. 7 U.S.C. § 2042(g).

Although defendant Buntings concedes that all of its workers are employed in agriculture or perform agricultural labor, it contends that the workers are not employed on a seasonal or temporary basis and that this is a requirement of the Act. The court is in agreement with defendant Buntings as to the fact that the workers are engaged in agricultural labor; however, the court is of the opinion that the workers are also engaged in seasonal or temporary employment.

In *Usery v. Coastal Growers Ass'n*, 418 F.Supp. 99 (C.D.Cal.1976), the court dealt with the question of what meaning to give to the term "migrant worker" after noting that the parties were in agreement as to the fact that the employees in that case were engaged in agricultural labor. The court stated:

> The court construes the term 'migrant worker' to include all persons whose principal or main occupation is in agriculture and all persons who perform agricultural labor on a seasonal or temporary basis. *See* 29 C.F.R. § 41.13. This broad construction comports with the Act's humanitarian purpose to protect all those hired by middlemen to toil in our nation's fields, vineyards, and orchards. 418 F.Supp. at 101.

Thus, the court in *Coastal Growers* found that the definition of migrant worker did not require a finding that the workers were engaged on a seasonal or temporary basis, as long as their principal occupation was in agriculture.

In the instant case, the testimony of the workers makes it clear that as employees of

Buntings, they were engaged principally in agricultural labor and that this work composed the greater portion of their employment for an entire year. As such, these workers come within the definition of migrant worker stated by the court in *Coastal Growers*. The testimony of many of the workers revealed that their work consisted of weeding plants and shrubs, pruning trees and shrubs, and various other types of labor in defendant's fields. Further, during the months that the workers were employed at Buntings, this was their full-time occupation for approximately eight and one-half hours each day. However, the court is of the opinion that it need not decide whether the broad definition given to migrant worker in the *Coastal Growers* case is correct as the court finds that the workers in the instant case were employed on a seasonal or temporary basis. It appears from the testimony that most of the workers reported to the camp at sometime in the spring of the year and that most left the camp and the employment of Buntings in the fall of the year. Although some of the employee witnesses stated various reasons for leaving Buntings in the fall of the year to return to Texas or Florida which had nothing to do with the availability of work at Buntings, several of the witnesses did indicate that were they to stay on at Buntings through the winter months there would not be sufficient work to provide an income upon which they could subsist. The testimony of Eugene Bunting buttressed this position when he stated that the time spent by him in the production aspects of his business was substantially greater during the growing and digging seasons.

█ It would appear that defendant's business is of the nature that it runs in seasons and that a greater number of workers are required to perform the field tasks during the growing and digging seasons. Thus, the work performed during the period from spring to fall involves work which is seasonalized and which could not be performed throughout the entire year. Although a certain amount of work may exist which requires the employment of some workers during the winter months, there is little support in the evidence for defendant's contention that all employees could have stayed on at Buntings through the winter had they chosen to do so. The fact that defendant's production season may be somewhat longer than that encountered in the usual situation in which migrant workers are employed for a short period of time to harvest a single crop does not detract from the fact that defendant's business is of such a nature that it requires the hiring of a greater number of workers for an employment period covering only certain portions of the year. Accordingly, the court finds that the workers employed by defendant Buntings come within the definition of migrant worker under the Act.

Defendants contend that defendant Mireles was not a farm labor contractor during calendar year 1977 because he did not engage in any of the activities of a contractor, in that he did not "recruit, solicit, hire, furnish, or transport" migrant workers. With respect to these activities of a farm labor contractor, the Secretary of Labor has promulgated a regulation which provides:

> These terms are to be given their ordinary meaning as each is defined in the unabridged edition of Webster's New International Dictionary. The Act will apply to any person who engages in or performs one or more of these activities and otherwise meets the definition of a farm labor contractor. 29 C.F.R. § 41.7.

Additionally, the court in *Usery v. Golden Gem Growers, Inc.*, 417 F.Supp. 857, 861 (M.D.Fla.1976), held that the use of the word "or" in the phrase "recruits, solicits, hires, furnishes, or transports" is "inclusive, meaning 'any or all' of the activities listed." Thus, it is necessary that the Secretary prove that defendant Mireles engaged in at least one of the enumerated activities and it is not necessary that Mireles have performed all of the listed activities during 1977.

Although the Secretary contends that defendant Mireles in fact engaged in each and every one of the listed activities, it appears that the Secretary presses his arguments

primarily as to the hiring and transporting of migrant workers by defendant Mireles. Webster's New International Dictionary defines the verb hire to mean "to engage the personal services of for a fixed sum: employ for wages." Under the facts of the instant case, it is necessary to determine whether the workers' services were engaged by defendant Mireles or by defendant Buntings. Defendant Buntings contends that although its foremen had the authority to speak with a prospective employee concerning the availability of work and the terms of employment such as rate of pay and to place said prospective employee in the fields where he would begin performing the services of a field laborer, the final decision on employment rested with Buntings and no one was actually hired until placed on the payroll in the offices of Buntings.

■ The court is of the opinion that defendant's characterization of which party does the actual hiring is in error. Although Buntings may have the authority to withhold final approval in the case of a worker who has been chosen and placed in the fields by defendant Mireles, it is defendant Mireles who has engaged that person to perform services for a certain rate of pay. Under the system of hiring used by defendant Buntings in 1977, an admittedly informal system, it was possible for a worker to be placed in the fields and to perform services for Buntings for which compensation would be required before Buntings officially placed the worker's name on its payroll records. Such a system requires that defendant Mireles engage in the acts surrounding the hiring of the worker and there is no indication from the evidence that Mireles did not have the authority to make the decision to initially hire a good number of the workers, even though Mr. Buntings retained a veto power which apparently was seldom exercised because of the acute need for workers in the growing and digging season. Accordingly, the court finds that defendant Mireles performed the farm labor contractor activity of hiring as that term is used in the Act.

There has been much dispute between the parties as to the proper meaning to be given to the term "transports" as that term is applied to the activities of a farm labor contractor. The ordinary meaning given to the term in Webster's New International Dictionary is that transport means "to transfer or convey from one person or place to another: carry, move." The evidence presented in the case reveals that defendant Mireles transported many of the workers either in his own personal vehicle or in a vehicle owned by defendant Buntings. This transportation included carrying workers from a central meeting yard in the morning to the particular field where they were to work that day and the moving of workers between fields when such was required during the course of the day's work. Additionally, defendant Mireles on numerous occasions provided transportation to the workers to nearby towns where they could purchase groceries and personal needs and do their laundry. These latter trips into town were conducted on Friday evenings and Saturdays after the work day had been completed.

■ Defendants contend that transportation, to be a farm labor contractor activity, must be incident to recruitment, hiring, solicitation or furnishing and that transportation of a purely local nature is not contemplated by the Act. The court disagrees with the position of the defendants and finds that the activity of transporting with respect to a contractor's activities includes such transportation of workers to and from the fields, between fields, and into neighboring towns to acquire groceries and do laundry. The court finds support for this conclusion in the language of 7 U.S.C. § 2044(a)(2), which provides:

The Secretary shall, after appropriate investigation, issue a certificate of registration under this chapter to any person who—

 * * * * * *

(2) has filed, . . . proof satisfactory to the Secretary of the financial responsibility of the applicant or proof satisfactory to the Secretary of the existence

of a policy of insurance which insures such applicant against liability for damages to persons or property arising out of the applicant's ownership of, operation of, or his causing to be operated any vehicle for the transportation of migrant workers in connection with his business, activities, or operations as a farm labor contractor. This provision gives a definition to the term "transports" which is broader in scope than that which defendants would have the court apply in this case. Part of defendant Mireles' business is to see that the workers are provided with a means of transportation from the camp or white house to the fields and between the fields when the day's assignments require such a transfer. Further, part of defendant Mireles' business as a middleman includes seeing to it that the workers are provided with a means of getting into town to secure the necessities of life which are not provided for at the camp or the white house. The court is convinced that defendant Mireles transports migrant workers within the meaning of the Act and as such performs the activities of a farm labor contractor.

Because the court has found that defendant Mireles has engaged in the activities of a farm labor contractor in that he hires and transports migrant workers and because it is necessary for the government to prove defendant engaged in only one of said activities, the court does not feel that it is necessary to make a determination as to whether defendant Mireles also recruited, solicited, or furnished migrant workers.

The court now turns to the issue of whether defendant Mireles performed farm labor contractor activities for a fee as that term is used in the Act. The Secretary has promulgated a regulation which defines the term "fee" in the following manner:

> The term 'fee' is defined by the Act to include any money or other valuable consideration paid or promised to be paid to a person for services as a farm labor contractor. Any moneys, checks, securities, or property, either personal or real, or other valuable consideration as this term is used for purposes of the law of contracts, paid or promised to be paid, whether as wages, salary, commission or any other method of payment, is a fee when paid to a person for services as a farm labor contractor within the meaning of the term. . . . The facts and circumstances of each individual case will be considered in determining whether any valuable consideration paid or promised to be paid constitutes a 'fee' within the meaning of the Act. 29 C.F.R. § 41.5.

That the term "fee" is to be considered synonymous with the term "consideration" as it is used in the traditional law of contracts was accepted by the court in *Usery v. Ventura County Farm Labor Association*, Civil Action No. CV–75–2997–JWC (C.D. Calif. August 26, 1976). The evidence in the instant case reveals that defendant Mireles in 1977 received an hourly wage of $2.50 per hour and, in addition, he received $.20 for each hour worked by a member of the field labor force who resided at either the camp or the white house. While Eugene Bunting testified to the effect that this wage payment arrangement was the same as that under which Mireles worked in 1976 when he also was a crew leader and that it was continued in 1977 when Mireles was a foreman because defendant Mireles, as Mr. Bunting put it, felt "more comfortable" with this arrangement, the court has little difficulty in finding that part of the wages paid to defendant Mireles in the form of $.20 per hour per worker was payment for the activities of Mireles as a farm labor contractor.

Defendant Mireles testified that in 1976 he held the position of crew leader and that in 1977 he took on the position of foreman. When asked to state the differences between his duties in the two years, defendant Mireles testified that in 1977 he did not have to engage in recruitment activities and he was not required to transport the workers for groceries and to do their laundry. In reality, however, it appears that defendant Mireles performed the same duties each of the two years except for the fact that he did not go to Texas for the purpose of actively recruiting workers from any employment agency of the state. De-

fendant Mireles continued to perform hiring functions in the same manner as he performed them in 1976. He continued to transport workers to and from the fields at the beginning and end of the work day and with sufficient regularity, he transported workers between fields. Further, Mireles continued to transport workers to nearby towns where they could obtain groceries and do laundry. In engaging in such activities, defendant Mireles maintained the position of a middleman between Buntings and the migrant workers. This position was further exhibited in Mireles' activities in assigning housing to workers upon their arrival, in taking responsibility for housing conditions about which complaints were received and in clearing up any possible problems workers may have had with receipt of proper pay.

The court finds little support for the argument that defendant Mireles did not receive a fee for these activities in the testimony of defendant Mireles that he continued to transport workers to town for shopping and laundry because of his feeling for the plight of the non-English speaking workers. Although Mr. Mireles' attitude is to be commended, it is well to remember that the purpose of the Farm Labor Contractor Registration Act is to secure protection to these same migrant workers through its continued enforcement. Although the testimony is somewhat unclear as to whether the workers would have had a means of transportation to town to secure the necessities of life had Mr. Mireles not provided this means either through his own driving of the bus or through seeing to it that a licensed driver was available to drive the bus, it is clear that in 1976 Buntings provided this service to the workers and compensated Mr. Mireles for performance of the same. It can be presumed that Buntings was aware that this same service was being provided in 1977 and that if it had to be paid for the previous year, it likewise would have to result in compensation to someone in 1977. As the responsibility for the migrant workers was placed primarily in the hands of Mr. Mireles, the court concludes that part of the payment of $.20 per hour per worker to Mr. Mireles was in consideration for his seeing to it that this service was provided.

■ In summary, the court finds that a portion of the wages paid to defendant Mireles was in the nature of consideration for the performance of the various activities of Mireles as a farm labor contractor and, as such, constituted a fee within the meaning of the Act.

■ As the court has found that the Secretary has proved each element of the definition of a farm labor contractor under the Act as to defendant Mireles, the court finds that defendant Mireles was a farm labor contractor during calendar year 1977.

■ At this point the court notes that the initial burden of proof in a case under the Act is on the Secretary to show that the Act is applicable to the defendants. Once this showing is made, the burden shifts to the defendants to show that they come within one or more of the exemptions provided for in the Act. *Usery v. Golden Gem Growers, Inc., supra,* at 860–861. Plaintiff has met his initial burden in showing that defendant Mireles was a farm labor contractor within the meaning of the Act and that defendant Buntings engaged his services as such. Defendants, in turn, contend that they may take advantage of the exemptions under 7 U.S.C. § 2042(b)(2) and (3) which provide as follows:

. . . Such term [farm labor contractor] shall not include—

\* \* \* \* \* \*

(2) any farmer, . . . or nurseryman who personally engages in any activity for the purpose of supplying migrant workers solely *for his own operation;* (3) any full-time or regular employee of any entity referred to in (1) or (2) above who engages in such activity solely for *his employer on no more than an incidental basis; . . .*

The court in *Golden Gem Growers, Inc., supra,* was faced with the question of whether a subsection (3) exemption should apply to a farm labor contractor. In that

case the corporate defendant was a Florida corporation engaged in the business of harvesting and processing citrus fruits of its shareholder-growers. Although the corporation did not seek a subsection (2) exemption, the court had to make a determination as to whether the corporation met the criteria of subsection (2) before it could consider whether the farm labor contractor was entitled to a subsection (3) exemption, as that subsection requires that the contractor be employed by a subsection (2) entity. In this regard, the court merely noted:

> The evidence is undisputed that Blocker is a full-time and regular employee of Golden Gem and that he performs the activities listed in Section 2042(b) (describing a farm labor contractor) solely for Golden Gem. To that extent, both Golden Gem and Blocker have satisfied the first criterion of the exemption in subsection (3). The second criterion, however, is that the regular, full-time employee, who performs the activities characteristic of a farm labor contractor, must do so 'on no more than an incidental basis.' 417 F.Supp. at 861.

*See also Marshall v. Silver Creek Packing Co.*, No. F–76–25 (E.D.Calif. August 23, 1977), reported at 83 Labor Cases 48,083.

 The interpretation given to subsection (2) in these cases indicates that a corporation is entitled to the exemption if it hires migrant workers solely for its own operations. This interpretation runs contrary to that given by an Opinion Letter of the Wage-Hour Administrator in which it is stated that a corporation is entitled to exemption under subsection (2) if "the corporation is under the effective control of an individual whose authority is equivalent to that of a sole proprietor, and if that individual acts in person with respect to the farm labor contracting activities for the corporation." Opinion Letter No. 1381 (WH–433) October 3, 1977. CCH Wages-Hours ¶ 31,-135 pp. 42,802–42,803. However, the court is of the opinion that it need not resolve this dispute as to interpretation at this time for two reasons: (1) defendant Buntings is not charged with being a farm labor contractor who has failed to obtain the proper

registration from the Secretary and, therefore, subsection (2) has no application to this case; and (2) the court is of the opinion that defendant Mireles has failed to meet the second criterion of subsection (3) in that the court finds that defendant Mireles has engaged in farm labor contractor activities on more than an incidental basis.

In determining the proper interpretation to be given to the phrase "on no more than an incidental basis", the court is guided by the statement of the court in *Golden Gem Growers, Inc., supra*:

> The phrase 'on no more than an incidental basis' is nowhere defined by the Act. Consequently, the Court must interpret it, and determine whether it applies in this case, on the basis of the factual circumstances presented and the congressional intent inferred from the legislative history. . . . Several relational factors must be considered. First, the relationship of the amount of time daily spent in performing farm labor contractor activities must be compared to the total amount of daily work time. Second, if a person performs other, additional duties, besides the activities of a farm labor contractor, the nature of those additional duties must be compared to his farm labor contractor activities. *Third, the extent to which an individual is personally and uniquely nonfungible in the performance of his farm labor activities must be compared to the extent to which he is replaceable or substituable in the performance of his additional duties.* Finally, based on the time, nature and uniqueness of a person's performance of both farm labor contractor activities and additional duties, the Court must determine the importance of his farm labor contractor activities in relation to the totality of his duties . . . . 417 F.Supp. at 861–862. (Emphasis supplied)

The fact that the court must examine into the importance of farm labor contractor's activities in determining whether they are performed on an incidental basis was further emphasized in an Opinion Letter of the Wage-Hour Administrator wherein it was stated:

. . . . the importance of the farm labor contractor activities must ultimately be determined in relation to the totality of the employee's duties based on the time, frequency, nature and indispensability of the employees in performing such duties. Thus, to be more than incidental the farm labor contracting activities need not be the only duties of the employee. It is sufficient to be more than 'on an incidental basis,' in our opinion, if the farm labor contracting activities are one of the major or principal functions of the individual's job. . . Opinion Letter No. 1381 (WH–433) October 3, 1977, *supra*, at 42,803.

In the present case, it seems clear from the evidence that the defendant Mireles occupied a unique position in the Bunting operation. It may be noted that of approximately ten foremen, he was the only foreman who was conversant with the Spanish language. He also was the buffer or middleman between management and the Spanish speaking work force which in terms of numbers constituted about a third of those employed. He performed hiring functions, often took phone calls where inquiries were made about work, assigned housing, dealt with requests for work made in the fields, handled complaints about housing and paychecks, transported workers from the white house to the yard, from the yard to the fields on occasion, and sometimes from field to field. Also on a regular and recurring basis he transported the Spanish speaking workers to Berlin for groceries and to the laundry in Selbyville, Delaware, and also to the doctor when needed. In all of these ways that he was helping the Spanish workers, he was performing a major or principal function of his job, not something that was just on an incidental basis. Under the circumstances of this case, the court considers him to be an individual who was "personally and uniquely nonfungible in the performance of his farm labor activities" since it was his aptitude in Spanish that made him an indispensable link between the Spanish speaking portion of the work force and the management of Buntings Nurseries. All of this in the court's judgment is confirmed by the fact that the part of his compensation based on the per hour labor of the Spanish workers he took care of greatly exceeded the regular $2.50 an hour in compensation he received for the performance of his other duties as foreman.

For all of these reasons, the court will enter a permanent injunction enjoining and restraining the defendants and all other persons in active concert or participation with them from violating the provisions of sections 4(a), 4(c), 5(a)(2), 5(b)(5), 5(d), 6(a), 6(b), 6(c), 6(d) and 6(e) of the Act. Costs will also be awarded in favor of the government, except that the court feels that the costs of the interpreter hired to translate in this case should be shared on a 50–50 basis.