Tomas SOLIZ et al.,
Plaintiffs-Appellants,

v.

Kenneth PLUNKETT, a/k/a "Guy Plunk-
ett", et al., Defendants-Appellees.

No. 77–3497.

United States Court of Appeals,
Fifth Circuit.

April 9, 1980.

As Modified on Denial of Rehearing
and Rehearing En Banc
May 19, 1980.

Florida Rural Legal Services, Inc., Robert A. Williams, Immokalee, Fla., Robert M. Hustead, Delray Beach, Fla., William P. Healy, Fort Pierce, Fla., for plaintiffs-appellants.

Paul A. Saad, John P. McAdams, Tampa, Fla., for defendants-appellees.

Before SIMPSON, CHARLES CLARK and FRANK M. JOHNSON, Jr., Circuit Judges.

SIMPSON, Circuit Judge:

Appellants, thirty-three migrant farmworkers, brought suit in the district court against appellees, four individuals and three corporations, alleging numerous violations of the Farm Labor Contractor Registration Act (the Act), 7 U.S.C. §§ 2041–55. At the close of plaintiff's presentation of the evidence the defendant appellees moved for involuntary dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The district judge responded by dismissing the action with prejudice upon finding that none of the defendants were farm labor contractors within the meaning of 7 U.S.C. § 2042(b) and that the defendant farmers had properly kept the payroll records as required by 7 U.S.C. § 2050c. The migrant workers appeal only the lower court's determination that appellee Plunkett is not a farm labor contractor. We find that the action was prematurely terminated because the migrant workers met their initial burden of showing that Plunkett is a farm labor contractor. Accordingly we reverse and remand for further proceedings.

The dispute concerns the harvesting of peppers by migrant farmworkers in Hendry County, Florida. The persons involved in the harvesting activities logically separate among six tiers. On the bottom tier are appellants, the migrant workers who actually pick the peppers. The second tier consists of the crew leaders, some of whom are apparently also migrant farmworkers. The crew leaders directly recruit and solicit the migrant workers when a field is ready for harvest. They are clearly farm labor contractors and are subject to the provisions of the Act, see 7 U.S.C. § 2042(b)(1), but none are party to the instant litigation. Appellees occupy the remaining four tiers. Appellee Plunkett is the sole inhabitant of the third tier. He determines the number of workers needed to harvest the field, acts as liaison between the farmers and the crew leaders and generally supervises the harvesting operation at the field. On the fourth tier is Johnson and Johnson Contracting which appears to be a loosely organized group consisting of four farmers, Plunkett, and the officers of two of the corporate farmers. The only apparent function of Johnson and Johnson Contracting is to operate as a central headquarters for payment of wages associated with the harvest, thereby simplifying the bookkeeping of the harvesting operation. On the fifth tier is Johnson Brothers, Inc., which ships and packs the peppers. The sixth and final tier consists of four farmers, appellee Edgar Gallops and three corporations.

The Act defines a farm labor contractor as "any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his immediate family) for agricultural employment." 7 U.S.C. § 2042(b). Farm labor contractors are required to register with the Department of Labor, must carry their registration certificates while engaging in farm labor contractor activities, must display the certificate to persons with whom they deal in a farm labor contractor capacity and must comply with numerous other requirements of the Act. 7 U.S.C. § 2045. Although appellants' complaint alleged that all appellees were farm labor contractors, their appeal is limited to the narrow question of whether Plunkett is a farm labor contractor. For this reason our review of the facts centers around his activities.

Harvesting operations are typically initiated when one of the farmers advises Plunkett that a field is ready for harvest. Plunkett goes to the field and determines the number of workers needed. He then contacts one or more crew leaders and requests that they bring their crews to the field at a designated time. The crew leaders personally contact the individual migrant workers. Some workers are transported to the fields by the crew leaders; others provide their own transportation.

At the field Plunkett has plenary supervisory power. He determines the areas to be picked, the hours of work, and he has the authority to fire individual workers. The rate of pay is set by either Plunkett or the farmer. He also insures that the daily payroll sheets are correctly completed.

The office manager of the packing shed reviews the payroll sheets, determines the proper deductions for each worker and issues a single check drawn on Johnson and Johnson Contracting to each crew leader. Twenty or thirty dollars per day is included for the crew leader's services. The crew leader in turn distributes the wages to each migrant worker, usually in cash. The farmers periodically reimburse Johnson and Johnson Contracting for amounts paid to harvest their crops.

Plunkett receives twenty-five dollars per day for contacting crew leaders and supervising the harvesting operation in the field. He also receives a per item fee for hauling the crops from the field to the packing house.

In early January 1977 appellee Edgar Gallops requested Plunkett to arrange for the harvest of the pepper crop at his field. Plunkett contacted one crew leader directly and contacted two others through his nephew. On the morning of January 7, 1977 the three crew leaders and their crews arrived at the Gallops field. None of the workers were informed, as the Act requires, of the rate to be paid. 7 U.S.C. § 2045(b). Several other violations of the Act occurred, including, but not limited to, failure to disclose and post the conditions of employment. 7 U.S.C. § 2045. After picking for

approximately forty-five minutes, the workers were told that the rate would be fifty-five cents per bucket. Appellants protested the rate, a work stoppage ensued and eventually appellants left the fields. The instant litigation followed.

Although the crew leaders are farm labor contractors, they were not joined as defendants because their limited financial resources would leave a judgment against them unsatisfied. It is evident that if Plunkett is a farm labor contractor he is guilty of numerous violations of the Act; he is not registered and the required disclosures were not made or posted. 7 U.S.C. §§ 2043, 2045. Furthermore, if Plunkett is a farm labor contractor, then appellee Gallops violated 7 U.S.C. § 2043(c) by engaging the services of Plunkett before determining that Plunkett had the required registration certificate.

The Farm Labor Contractor Registration Act establishes a system of registration for, and imposes obligations on, farm labor contractors, the "middlemen in making work arrangements between farmworkers and growers and [who] in this capacity often recruit, transport, supervise, handle pay arrangements, and, otherwise act as intermediary between the migrant worker and the farmer." Senate Report No. 202, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 3690. The Act, as amended in 1974, provides a civil remedy to migrant workers injured by violations of its provisions. 7 U.S.C. § 2050.

■ On this appeal we must determine whether Plunkett is a person "who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, *or* transports migrant workers . . . for agriculture employment." 7 U.S.C. § 2042(b) (emphasis added). The migrant workers, as plaintiffs, bore the initial burden of establishing the applicability of this provision of the Act. *See Marshall v. Buntings' Nurseries of Selbyville, Inc.*, 459 F.Supp. 92, 99 (D.Md.1978); *Usery v. Golden Gem Growers, Inc.*, 417 F.Supp. 857, 860 (M.D.Fla.1976). In other words, to survive the Rule 41(b) motion to dismiss, the mi-

grant workers were required at least to show, by a preponderance of the evidence, that Plunkett was a farm labor contractor. Fed.R.Civ.P. 41(b). *See Emerson Electric Co. v. Farmer*, 427 F.2d 1082, 1086 (5th Cir. 1970); *Weissinger v. United States*, 423 F.2d 795, 798 (5th Cir. 1970) (en banc). If appellants met this initial burden then the burden shifted to the defendants to show that they were within one of the enumerated exceptions to the statutory definition of a farm labor contractor.[1] Accordingly, we need not consider whether Plunkett qualifies under one of the exceptions because the burden of establishing the applicability of an exception lies with the defendants and because the evidence admitted prior to dismissal failed to establish the applicability of any exception.

■ The agreed upon statement of facts reveals that Plunkett received a fee for contacting the crew leaders, and the parties stipulated that plaintiffs are within the Act's definition of the term migrant worker. 7 U.S.C. § 2042(g). The only inquiry that remains is whether Plunkett recruited, solicited, hired, furnished, or transported the migrant workers. 7 U.S.C. § 2042(b). Our review of the district court's interpretation of the statute involves a question of law and therefore is not constrained by the clearly erroneous standard of Rule 52(a) of the Federal Rules of Civil Procedure. Interpretation of the statute is guided by the rules of statutory construction, the plain meaning of the statute's terms, previous court interpretations, the interpretation of the Secretary of Labor as the administrative agency charged with administration of the statute, and the legislative history of the Act. These sources lead us to conclude that Plunkett is a farm labor contractor who furnished migrant workers to appellee Gallops for a fee. 7 U.S.C. § 2042(b).

■ The Act should be broadly construed because it is remedial in nature. *Marshall v. Coastal Growers Ass'n*, 598 F.2d 521, 525 (9th Cir. 1979); *Marshall v. Buntings' Nurseries of Selbyville, Inc., supra*, 459 F.Supp. at 95; *Usery v. Coastal Growers Ass'n*, 418 F.Supp. 99, 101 (C.D.Cal.1976). *See Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); *Tcherepnin v. Knight*, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). As one district court has recognized, broad construction of the Act "comports with the Act's humanitarian purpose

---

1. *Marshall v. Buntings' Nurseries of Selbyville, Inc., supra*, 459 F.Supp. at 99; *Usery v. Golden Gem Growers, Inc., supra*, 417 F.Supp. at 861. The exceptions to the farm labor contractor definition are:

(1) any nonprofit charitable organization, public or nonprofit private educational institution, or similar organization;

(2) any farmer, processor, canner, ginner, packing shed operator, or nurseryman who personally engages in any such activity for the purpose of supplying migrant workers solely for his own operation;

(3) any full-time or regular employee of any entity referred to in (1) or (2) above who engages in such activity solely for his employer on no more than an incidental basis;

(4) any person who engages in any such activity (A) solely within a twenty-five mile intrastate radius of his permanent place of residence and (B) for not more than thirteen weeks per year;

(5) any person who engages in any such activity for the purpose of obtaining migrant workers of any foreign nation for employment in the United States if the employment is subject to—

(A) an agreement between the United States and such foreign nation; or

(B) an arrangement with the government of any foreign nation under which written contracts for the employment of such workers are provided for and the enforcement thereof is provided for through the United States by an instrumentality of such foreign nation;

(6) any full-time or regular employee of any person holding a certificate of registration under this Act [7 USC §§ 2041 et seq.];

(7) any common carrier or any full-time regular employee thereof engaged solely in the transportation of migrant workers;

(8) any custom combine, hay harvesting, or sheep shearing operation; or

(9) any custom poultry harvesting, breeding, debeaking, sexing, or health service operation, provided the employees of the operation are not regularly required to be away from their domicile other than during their normal working hours.

7 U.S.C. § 2042(b).

to protect all those hired by middlemen to toil in our nation's fields, vineyards and orchards." *Usery v. Coastal Growers, Inc., supra,* 418 F.Supp. at 101. See also *Marshall v. Buntings' Nurseries of Selbyville, Inc., supra,* 459 F.Supp. at 95. Obviously, by use of the disjunctive "or" Congress intended that the farm labor contractor definition include those who engage in one or more of the enumerated activities. *DeLeon v. Ramirez,* 465 F.Supp. 698, 702 (S.D. N.Y.1979); *Marshall v. Buntings' Nurseries of Selbyville, Inc., supra,* 459 F.Supp. at 96; *Usery v. Golden Gem Growers, Inc., supra,* 417 F.Supp. at 861.

■ The Secretary of Labor, pursuant to authority granted by the Act, 7 U.S.C. § 2053, has promulgated a regulation which directs that the terms "recruits, solicits, hires, furnishes or transports" be given their ordinary. meaning as defined in the unabridged edition of Webster's New International Dictionary. 29 C.F.R. § 41.7 (1979). This patently reasonable interpretation by the agency charged with administration of the statute is entitled to great deference. *E. g., Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 16 (1965); *Coca-Cola Co. v. Atchison, T. & S. F. Ry. Co.,* 608 F.2d 213, 222 (5th Cir. 1979). Webster defines the verb furnish as "to provide or supply with what is needed, useful or desirable." Webster's Third International Dictionary 923 (1971). Plunkett provided or supplied the farmers with what was needed, *migrant workers,* by determining the number of workers required, contacting the crew leaders and insuring that the harvest proceeded properly. Plunkett "furnished" migrant workers to the farmers and by these acts became a farm labor contractor, assuming none of the exceptions applied.

Appellees argue that Plunkett's activities do not come within the statutory definition because he did not personally contact the individual migrant workers. They further argue that only the crew leaders (who are judgment proof by virtue of their financial status) were the only farm labor contractors involved in the harvest. We disagree. The legislative history abounds with statements indicating that the Congress intended the Act to apply to the middlemen who make arrangements between farmers and migrant workers.[2] The following discussion between Senator Miller and Senator Williams, the sponsor of the bill, is particularly instructive:

Mr. MILLER: I should like to ask three questions which I believe may be helpful in connection with establishing the legislative history of this very important measure.

First, as I read the bill, growers' associations are exempt from the registration requirements if they employ a crew, making all arrangements for employment of the crew with the crew leader, who in turn deals directly with his own crew. I should like to ask the Senator from New Jersey whether that is his interpretation of the bill.

Mr. WILLIAMS of New Jersey. Of course, the Senator from Iowa has discussed this question with me. In order not to be precise, I should like to include a statement which reflects our feeling in regard to just what this measure will do.

I would have to disagree with that interpretation of the bill, for this reason: One of the major purposes of this legislation is to protect migrant workers against those who deal with them unfairly or dishonestly.

2. See, for example the following excerpt from the Senate report on the 1974 amendments to the Act: "Although the specific functions of the farm labor contractor, often called a 'crew leader' or 'crew pusher', might vary from job to job, his role essentially remains the same—a *bridge* between the operator and the worker." Senate Report No. 93–1295, 93rd Cong. 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6441, 6442 (emphasis added), and the following excerpt from the Senate report on the original Act: "Farm labor contractors are the *middlemen in making arrangements between farmworkers and growers* and in this capacity often recruit, transport, supervise, handle pay arrangements, and, otherwise act as an *intermediary* between the migrant worker and the farmer." Senate Report No. 202, 88th Cong., 2d Sess., *reprinted in* [1964] U.S.Code Cong. & Admin.News, p. 3690. (emphasis added).

We make an exception for the employer recruiting for his own operations. The farmer or canner, for example, has this exclusion. We do not try to oversee these employers' relationship with the workers. But we cannot go much beyond that.

Where an association recruits workers through a crew leader, there is need for control over such activity, even though the association does not deal with the workers directly.

Section 6(b) of the bill requires a crew leader to disclose the terms and conditions of employment to workers, at the time when they are recruited, to the best of his knowledge and belief. A crew leader recruiting for an association may comply fully with this provision; but at the same time it is entirely possible that the association may have misrepresented the terms of employment to the crew leader. In such a situation the worker would be protected only if the association is also subject to the registration requirements.

109 Cong.Rec. 10625 (1963).

 In the present fact situation Plunkett is one of two links in the chain of contact between the farmer and the migrant worker. A person may not insulate himself from the provisions of the Act by simply conducting his farm labor contractor activities through underlings who deal more directly with the workers. The regulations of the Secretary support our conclusion that the Act applies to all middlemen and not just those on the bottom of the farmer to migrant worker chain: "The Act was intended to regulate the practices of *all* persons functioning in the capacity of middlemen between the farmer, processor, etc., and the migrant worker". 29 C.F.R. § 41.17 (1979) (emphasis added). A contrary conclusion would frustrate the remedial purposes of the Act by allowing evasion by a simple fracturing of the contracting process. This possibility is amply demonstrated in this fact situation because if middleman Plunkett is not a farm labor contractor the only persons left are the crew leaders many of whom are also migrant workers. These minor crew leaders are generally not in a position to prevent the abuses that led to passage of the Act, and they are only minimally subject to the policing provisions of the Act because of their limited financial resources.

Appellants met their initial burden of showing applicability of the Act by demonstrating that Plunkett is a farm labor contractor who was hired by appellee Gallops. The district court terminated this action prematurely. Upon remand, defendants-appellees should be accorded an opportunity to refute appellants' prima facie case by contra evidence, and further to demonstrate the applicability of any of the farm labor contractor exceptions. The court shall determine whether any actionable violations were committed, and, if warranted, award appropriate relief.

REVERSED AND REMANDED.