Joseph L. SAMUEL, Joseph M. Samuel, Mark Samuel, Thomas Vernon, Plaintiffs,

v.

Raymond DONOVAN, Secretary of Labor, United States Department of Labor [1], Defendant.

No. C–80–20–G.

United States District Court, M. D. North Carolina, Greensboro Division.

April 27, 1981.

---

1. Raymond Donovan has succeeded F. Ray Marshall as Secretary of Labor. Raymond Donovan is, therefore, substituted for F. Ray Marshall as the defendant in this case. No further action need be taken to continue the suit by reason of Fed.R.Civ.P. 25(d)(1): "When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and his successor is automatically substituted as a party."

Daniel S. Walden, Winston-Salem, N. C., for plaintiffs.

J. Donald Cowan, Jr., Greensboro, N. C., H. Edward Dunkelberger, Jr., David F. Williams, Washington, D. C., amicus curiae, for National Food Processors.

Charles F. C. Ruff, U. S. Atty., Carin Ann Clauss, Sol. of Labor, Ronald G. Whiting, Associate Sol., Paul E. Myerson, Counsel for Emp. Standard, Laurie E. Rucoba, Staff Atty., U. S. Dept. of Labor, Washington, D. C., for defendant.

Leon L. Gordon, Los Angeles, Cal., amicus curiae, for National Council of Agr. Employment.

## MEMORANDUM OPINION

WARD, District Judge.

This matter is before the Court on appeal from a decision by the Secretary of Labor (Secretary) imposing civil penalties against each plaintiff for violations of the Farm Labor Contractor Registration Act, 7 U.S.C. §§ 2041–2055 (the Act). After investiga-

tion, the Secretary's Wage and Hour Division notified the plaintiffs of the assessment of penalties on October 30 and November 20, 1978. The plaintiffs timely filed a request for a hearing to challenge the penalties, and an Administrative Law Judge (ALJ) conducted a hearing on June 29, 1979. The plaintiffs were represented by counsel at the hearing and had the opportunity to cross-examine witnesses and introduce evidence.

In a lengthy written decision, the ALJ reduced the penalties and ordered them enforced as modified. Notice of Appeal Exhibit A (January 17, 1980). The plaintiffs timely appealed to this Court to review the ALJ's decision pursuant to the Act's provisions, 7 U.S.C. § 2048(b)(3). The parties filed cross-motions for summary judgment on May 6, 1980 and May 20, 1980. On July 2 & 17, 1980, the Court granted leave to the National Council of Agricultural Employers and Agricultural Producers (NCAE) and the National Food Processors Association (NFPA) to file briefs as *amici curiae*. They have done so. (July 17 & 25, 1980). The Court conducted a hearing on this matter on April 21, 1981, at which counsel for plaintiffs and defendant appeared and argued.

The standard of review in this Court is prescribed by 5 U.S.C. § 706(2)(E) which provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

. . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

: . . .

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute. . . .

Under this limited review, the Court must determine if the ALJ's decision is supported by substantial evidence and if it applies the correct legal standards, consistent with the Act. *Cf. Frady v. Harris,* —— F.2d ——, —— (4th Cir. 1981) (review of final decisions of the Secretary of Health and Human Services is "extremely limited").

The parties do not dispute the ALJ's findings of fact. The record contains substantial uncontested evidence that the plaintiffs were engaged in the tobacco hauling business. Their business involved loading and transporting leaf tobacco from the auction warehouses to various tobacco companies' prizing rooms. Plaintiffs recruited, hired and transported workers from different towns and housed them in various hotels in tobacco marketing areas. The workers, *inter alia,* moved piles of leaf tobacco after purchase by tobacco companies from the auction warehouse floor to the warehouse loading docks or bays, loaded the tobacco onto the plaintiffs' trucks and drove the trucks to various tobacco companies' facilities called prizing rooms. There, tobacco company employees weighed, cleaned and graded the tobacco and then transported it from the prizing rooms to stemmeries. At the stemmeries, tobacco company employees stemmed and shredded the tobacco, packed it in large containers and transported it to other warehouses for lengthy storage for aging. The plaintiffs received a fee for the work they and their employees performed computed as a certain rate per quantity of tobacco transported.

The parties frame the issues before the court as follows:

[T]he [Farm Labor Contractor Registration] Act simply does not apply to the activities engaged in by plaintiffs and their employees. Specifically, error is claimed in the findings of the Secretary

of Labor that plaintiffs are "farm labor contractors" and that plaintiffs hire "migrant workers" for "agricultural employment", these words being terms of art and specifically defined in the Act.[2] Plaintiffs' Brief p. 1 (April 28, 1980). The Act defines "farm labor contractor" to mean "any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports migrant workers (excluding members of his immediate family) for agricultural employment." 7 U.S.C. § 2042(b). At issue is the ALJ's determination that the plaintiffs' employees are "migrant workers" engaged in "agricultural employment" within the meaning of the Act.

When Congress passed the Act in 1963, it defined the term "agricultural employment" as follows:

The term "interstate agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26, when such service or activity is performed by an individual worker who has been transported from one State to another or from any place outside of a State to any place within a State.

7 U.S.C. § 2042(d). Congress defined the term "migrant worker" at § 2042(g) to mean "an individual whose primary employment is in agriculture, as defined in section 203(f) of Title 29, or who performs agricultural labor, as defined in section 3121(g) of Title 26, on a seasonal or other temporary basis." Thus, Congress defined the terms "agricultural employment" or "employment … in agriculture" in §§ 2042(d) & (g) by reference to the same statutory language. No one disputes that the Act's 1963 definition of "migrant worker," based on the then current definition of "agricultural employ-

---

**2.** The plaintiffs framed the issues in the same way to the ALJ. His decision recites at p. 3:

The brief submitted by counsel on behalf of Respondents stated: "Respondents in this proceeding do not contest the facts that they neither registered nor met the various posting compliance and reporting obligations imposed by the Act. Rather Respondents' con-

tention is that the Act simply does not apply to the activities engaged in by themselves and their employees. Specifically at issue in this proceeding is: (1) whether Respondents are 'farm labor contractors' and (2) whether Respondents hire 'migrant workers' for 'agricultural employment.' "

ment" incorporating by reference 29 U.S.C. § 203(f) and 26 U.S.C. § 3121(g), did not include the plaintiffs' employees.

However, in 1974 Congress amended the Act and expanded the definition of agricultural employment contained in § 2042(d). Now,

> [t]he term "agricultural employment" means employment in any service or activity included within the provisions of section 203(f) of Title 29, or section 3121(g) of Title 26 *and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state.*

(emphasis added to highlight the amendment, Pub.L.No. 93–518 § 3, 88 Stat. 1652 (1974)). The plaintiffs wish the Court to construe the term "migrant worker" using the preamendment definition of "agricultural employment," thus excluding plaintiffs from coverage under the Act. Alternatively, plaintiffs argue that their employees are not "migrant worker[s]" engaged in "agricultural employment" even under the defendant's construction of those terms.

The Court should set aside the ALJ's determinations of law if they are not supported by substantial evidence. 5 U.S.C. § 706(2)(E). The ALJ has reached an erroneous conclusion of law that is contrary to the Act's implementing regulations promulgated by the Secretary. In 29 C.F.R. §§ 780.153 & .154, the Secretary has defined the terms "delivery to storage" and "delivery to market," and thus explained the term "migrant worker," 29 C.F.R. § 41.-12(b), as it applies to this case. 29 C.F.R. § 780.153 defines the term "delivery to storage" to mean "taking agricultural or horticultural commodities ... to the places where they are to be stored or held pending preparation for or delivery *to market*." (emphasis added). This regulation is entitled to great weight and authoritatively

governs application of the term "migrant worker" to the plaintiffs' employees. *See Soliz v. Plunkett,* 615 F.2d 272 (5th Cir. 1980); *Usery v. Coastal Growers Assoc.,* 418 F.Supp. 99 (C.D.Cal.1976); *see also Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415, 420 (1972).

Substantial evidence, as found by the ALJ at p. 12 of his decision, reveals that "[t]he work performed by [the plaintiffs'] employees begins *after the tobacco has been sold at auction to the purchasing tobacco company ....*" (emphasis added). However, the ALJ then construed the critical term "delivery for storage" at p. 15 of his decision as follows:

> [T]he basis for my ruling is that the workers in the instant case were employed on a seasonal or temporary basis in the horticulture enterprise of moving unmanufactured tobacco *after sale* for processing and storage. The workers employed by Respondents are found to come within the definition of migrant worker under the Act. The storage contemplated under the Act, is in my opinion, that following completion of processing of the product for manufacture.

(emphasis added).

The ALJ's unsupported construction of the term "delivery for storage" is directly contradicted by 29 C.F.R. § 780.153 which the Secretary has expressly applied to the definition of "migrant worker." 29 C.F.R. § 41.12(b). The undisputed facts, as found by the ALJ reveal that plaintiffs' employees never came into contact with the tobacco until after delivery to market and, in fact, after marketing itself.[3] The plaintiffs' employees are excluded from the Act's coverage under the Secretary's own interpretation of the Act's terms. Accordingly, based on the uncontested facts, the Court finds that the plaintiffs are entitled to

---

3. *See* 29 C.F.R. § 780.154. As stated by defendant's counsel at the hearing, seasonal stemmery workers who handle tobacco in its unmanufactured state arguably would be migrant workers under the ALJ's analysis. This is contrary to common knowledge, at least in this part of the country, that stemmery work is a part of the manufacturing process and is not agricultural employment.

judgment as a matter of law. Fed.R.Civ.P. 56(c).

An Order will be entered accordingly.